# United States Court of Appeals
## For the First Circuit

No. 04-2582

JUAN CORDERO-SOTO,

Plaintiff, Appellant,

v.

ISLAND FINANCE, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Lipez, and Howard, Circuit Judges.

John Ward-Llambias for appellant.
Francisco M. Ramírez-Rivera, with whom Amelia Fortuño-Ruiz and
Martinez, Odell & Calabria were on brief, for appellee.

August 12, 2005

**LIPEZ**, <u>Circuit Judge</u>. Plaintiff-appellant Juan Cordero-Soto appeals the grant of summary judgment dismissing his claims against Defendant-appellee Island Finance, Inc. under the Age Discrimination in Employment Act, 29 U.S.C §§ 621-634 ("ADEA"). We affirm.

## I.

Cordero was forty-nine and on sick leave when he was terminated on October 27, 2000 from his position as a Branch Manager of Island Finance, a loan company for which he had worked in differing capacities for more than 25 years. On May 15, 2002, Cordero filed suit in federal court, alleging that Island Finance had terminated his employment because of his age in violation of the ADEA. Cordero also brought claims under 42 U.S.C. § 1983 and Puerto Rico law.

On January 26, 2004, Island Finance moved for summary judgment on Cordero's ADEA claims, as well as dismissal of his claims under § 1983 and Puerto Rico law. In its motion for summary judgment, Island Finance argued that Cordero was ineligible for back pay, front pay, or reinstatement for any ADEA violation as a matter of law because the Social Security Administration had designated him disabled as of September 15, 2000, the date he went on sick leave, and because Cordero continued to receive Social Security Disability Insurance ("SSDI") benefits. Island Finance also argued that Cordero could not recover liquidated damages,

which are available only for willful violations of the ADEA. 29 U.S.C. § 626(b); see Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 125 (1985) (explaining that statutory provision "which makes the award of liquidated damages mandatory" under the Fair Labor Standards Act "is significantly qualified" in its application to the ADEA "by a proviso that a prevailing plaintiff is entitled to double damages 'only in cases of willful violations.'" (quoting 29 U.S.C. § 626(b))).

The district court issued an opinion and order on September 30, 2004 granting Island Finance's motion for summary judgment on Cordero's ADEA claims, granting its motion to dismiss Cordero's § 1983 claims, and declining to exercise supplemental jurisdiction over Cordero's claims under Puerto Rico law. See Cordero Soto v. Island Fin., Inc., 338 F. Supp. 2d 299 (D.P.R. 2004). The court first explained that, as a result of Cordero's "repeated lack of compliance with the deadlines to oppose both motions, this Court denied plaintiff's final request for an extension of time. Therefore, both motions are unopposed." Id. at 300. However, the court later "ordered the parties to file supplemental briefs on the issue of Island Finance's reasons for terminating Cordero, and Cordero did file an opposition to Island Finance's brief," including seventeen attached exhibits. Id. at 301. "Of those exhibits, seven (7) were submitted in the Spanish language without a certified English translation." Id. Because

Cordero "did not ask for leave to file said exhibits in Spanish while he obtained the necessary translations" or "subsequently present any translations," the court excluded the Spanish-language exhibits from consideration.  Id.

Turning to the merits of Island Finance's motion for summary judgment, the court concluded that because "Cordero continues to receive benefits for a disability that prevents him from being gainfully employed, and has not submitted evidence that he would be able to go back to work," he was ineligible as a matter of law for back pay, front pay, or reinstatement for any ADEA violation.  Id. at 302.  The court also concluded that Cordero could not recover liquidated damages for a willful ADEA violation.  Id.  Cordero filed a timely notice of appeal from the court's grant of summary judgment on his ADEA claim, challenging (1) the court's denial of Cordero's motion for an extension of time and its exclusion of the Spanish-language exhibits, and (2) its decision on the merits.[1]

**II.**

**A.        Scope of the Summary Judgment Record**

Under the local rules of the United States District Court for the District of Puerto Rico, "[u]nless within ten (10) days

[1]Cordero does not appeal the dismissal of his § 1983 claims pursuant to Fed. R. Civ. P. 12(b)(6) or the dismissal without prejudice of his claims under Puerto Rico law.  See Cordero-Soto, 338 F. Supp. 2d at 302-03.

-4-

after the service of a motion the opposing party files written objection thereto, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection."  D.P.R. R. 7(b) (renumbered as Rule 7.1(b), effective April 5, 2004).  However, Federal Rule of Civil Procedure 6(b) confers discretion on a court to grant an extension of time after the expiration of a filing deadline for "excusable neglect."  "In the absence of a manifest abuse of discretion, . . . we will not interfere with a district court's reasoned refusal to grant incremental enlargements of time."  Mendez v. Banco Popular de P.R., 900 F.2d 4, 7 (1st Cir. 1990).  No such abuse occurred here.

The court granted Cordero's first request for an extension of time until February 25, 2004.  On March 4, 2004, Cordero requested an additional extension of time until March 8, 2004.[2]  By March 18, 2004, when Cordero still had not filed an opposition, the court issued an order declaring his motion of March 4, 2004 moot and Island Finance's motion for summary judgment unopposed.  On March 30, 2004, Cordero filed a third motion for an extension of time until April 20, 2004, attaching a hospital discharge record and explaining that his counsel had been hospitalized from March 5 through March 10, 2004 with a "pulmonary

---

[2]Cordero's motion cited "technical difficulties with the implementation of the [court's] electronic filing system," problems saving a computer file, and schedule conflicts that had prevented the filing an opposition on or before February 25, 2004.

infection and other conditions," after which counsel was instructed to rest for 20 days.

Island Finance filed an opposition to Cordero's motion the next day, arguing, inter alia, that Cordero's counsel had been well enough to take a deposition on March 18, 2004, and therefore could have filed his third motion for an extension before March 30, 2004. The court denied Cordero's motion on April 2, 2004, stating: "This Court notes that plaintiff has repeatedly failed to comply with this Court's deadlines, and failed to notify this court in a timely manner of any circumstances that could support an extension of time."

While we do not fault counsel for choosing to risk his own health on his client's behalf by taking a deposition, the court could reasonably have expected him to make the small additional effort of contemporaneously filing a motion for an extension of the deadline for responding to the pending motions. Under these circumstances, the court did not abuse its discretion in denying Cordero's third motion for an extension of time to file an opposition. As a consequence, the court properly treated Island Finance's motion as unopposed and its statement of facts admitted. See Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1st Cir. 2003) ("This court has held repeatedly that the district court in Puerto Rico is justified in holding one party's submitted uncontested facts to be admitted when the other party fails to file oppositions

in compliance with local rules."); D.P.R. R. 56(e) ("Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted.") (proposed rule effective September 29, 2003, adopted as final rule effective April 5, 2004).

Nor did the court abuse its discretion by excluding from consideration Cordero's Spanish-language exhibits. "It is well settled that federal litigation in Puerto Rico [must] be conducted in English." González-De Blasini v. Family Dep't, 377 F.3d 81, 88 (1st Cir. 2004)(internal quotation marks and citation omitted); see Pena-Crespo v. Puerto Rico, 408 F.3d 10, 14 (1st Cir. 2005) (not an abuse of discretion for the district court to exclude plaintiff's expert testimony where the plaintiff failed to provide an English translation of expert's report and resume, and made no attempt to remedy the omission before the court); see also 48 U.S.C. § 864; D.P.R. R. 10(b) ("All documents not in the English language which are presented to or filed in this Court, whether as evidence or otherwise, shall be accompanied at the time of presentation or filing by an English translation thereof, unless the Court shall otherwise order.") (approved as final rule effective April 5, 2004).

**B.     Merits**

"Even where the record is circumscribed because summary judgment was unopposed, a district court may grant summary judgment against the nonresponding party only 'if appropriate.'" Torres-Rosado, 335 F.3d at 9 (quoting Fed. R. Civ. P. 56(e)). Accordingly, "before granting an unopposed summary judgment motion, [t]he court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." Lopez v. Corporación Azucarera de P.R., 938 F.2d 1510, 1516 (1st Cir. 1991) (internal quotation marks omitted, alteration in original).

We review the grant of summary judgment de novo, based on the record as it stood before the district court. Torres-Rosado, 335 F.3d at 9, 5.[3] We view the record in the light most favorable to Cordero, the non-moving party. Estades-Negroni v. Assocs. Corp. of N. Am., 377 F.3d 58, 62 (1st Cir. 2004). Pursuant to Fed. R. Civ. P. 56(c), summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[3]We therefore do not consider the affidavit of Hector Cardona, Cordero's supervisor, which Cordero did not file with the court until he moved to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e) on October 11, 2004. Because Cordero did not amend his notice of appeal, which was filed while his Rule 59(e) motion was pending, the court's subsequent decision denying the Rule 59(e) motion is not properly before us. See Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 68 (1st Cir. 2005) (limiting jurisdiction to order in notice of appeal where "[n]o new notice of appeal was filed after [later] orders were entered, as required by Fed. R. App. P. 4(a)(4)(B)(ii)").

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show, through materials of evidentiary quality, that such a dispute exists."  Rathbun v. Autozone, Inc., 361 F.3d 62, 66 (1st Cir. 2004).

In order to prevail on a claim of pretextual age discrimination, an ADEA claimant who lacks direct evidence, as Cordero does, must first make out a prima facie case triggering a rebuttable presumption of age discrimination by

> adduc[ing] evidence that (1) [he] was at least forty years of age; (2) [his] job performance met the employer's legitimate expectations; (3) the employer subjected [him] to an adverse employment action (e.g., an actual or constructive discharge); and (4) the employer had a continuing need for the services provided by the position from which the claimant was discharged.

Gonzalez v. El Dia, Inc., 304 F.3d 63, 68 n.5 (1st Cir. 2002). Upon a sufficient showing, the burden of production shifts to the employer "to articulate a legitimate, nondiscriminatory basis for its adverse employment action." Id. at 69.  Once an employer has made a successful proffer, the claimant must then establish that the employer's given reason "was pretextual" and that the record evidence would permit a reasonable jury to infer that the real reason was "discriminatory animus" based on his age.  Id.

-9-

Applying this three-step test within the framework of a motion for summary judgment, we conclude that Island Finance was entitled to summary judgment, although we affirm on grounds that differ from those given by the district court. See Estades-Negroni, 377 F.3d at 62 ("We may affirm the district court's decision on any grounds supported by the record."). Assuming Cordero has established a prima facie case of age discrimination, the evidence supports the inference that Island Finance had a legitimate, non-discriminatory reason for terminating Cordero's employment: the branch office for which Cordero was responsible performed worse than at least 40 other branches, based on at least three objective financial indicators.

According to the affidavit of Sylvia Chaluissant Sepulveda, Vice-President, Human Resources Director of Island Finance Puerto Rico, Inc., Island Finance made the decision "to replace those Branch Managers whose branches[,] [based on] the Branches Comparison Report corresponding to August 2000, were not performing as expected and whose performance ranked 41 or above in three or more . . . areas." Upon analysis of financial data for each branch, according to Chaluissant's affidavit, Island Finance determined that "Mr. Juan Cordero was one of the Branch Managers whose Branch's performance ranked 41 or above in three areas and was not performing as expected. The categories in which Mr. Cordero's Branch was ranked 41 or above were Activity (41), Gain

(50) and Delinquency (43)." The affidavit explains that "Activity measures the number of loans made by the Branch"; "Gain measures the growth or reduction of their outstanding receivables, the dollars outstanding"; and "Delinquency measures the payments past due on the Branch." The attached "Island Finance Puerto Rico Branches Comparison Report as of August, 2000" corroborates Chaluissant's statements. Chaluissant's affidavit concludes: "The reasons for Plaintiff's discharge were entirely based on the lack of performance of the Branch he managed." Finally, the deposition testimony of Mr. Oriol Segarra, President of Island Finance, who signed Cordero's termination letter, also indicates that the decision of which Branch Managers to replace was based on an evaluation of the performance of each manager's branch.[4]

In the face of this evidence, Cordero argues that Island Finance's apparently legitimate reason for terminating him is in fact pretextual, and that its true reason was his age. As support for the inference of pretext, Cordero points to his own affidavit, in which he states that "[i]n my case, as well as [those of] other managers and senior managers, I was transferred to another branch with lower production shortly before my termination. Likewise,

_____

[4]Cordero does not contest Island Finance's data analysis, except to argue that a Branch Manager's performance should be based on more than the financial performance of his branch. Even assuming this to be true, "[c]ourts may not sit as super personnel departments, assessing the merits -- or even the rationality -- of employers' nondiscriminatory business decisions." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991).

-11-

other managers were transferred to better ranked branches so they would appear as achievers in a short period of time." In addition to being unsigned and undated, Cordero's affidavit provides no basis for his personal knowledge of the facts supporting his statements, as is required for consideration in opposition to a motion for summary judgment. Fed. R. Civ. P. 56(e) (affidavits "shall be made on personal knowledge . . . [and] show affirmatively that the affiant is competent to testify to the matters stated therein"). Furthermore, "[a] properly supported motion for summary judgment cannot be defeated by relying upon improbable inferences, conclusory allegations, or rank speculation" of the sort contained in Cordero's affidavit. Rathbun, 361 F.3d at 66.

In the absence of any "evidence from which a reasonable jury could infer, without the most tenuous insinuation," that Island Finance's legitimate, non-discriminatory reason for terminating Cordero "was actually a pretext for age discrimination," Mesnick, 950 F.2d at 826, Island Finance is entitled to summary judgment.[5] The district court's grant of summary judgment dismissing Cordero's ADEA claims is **affirmed**.

**So ordered**.

---

[5]We therefore do not address the effect of Cordero's successful claim for SSDI benefits on his entitlement to specific remedies under the ADEA.