# United States Court of Appeals
## For the First Circuit

_____

No. 05-1854

CARLOS FONTÁNEZ-NÚÑEZ,
NORA RIVERA-CARDENALES,
CONJUGAL PARTNERSHIP FONTÁNEZ-RIVERA,
Plaintiffs, Appellants,

v.

JANSSEN ORTHO LLC;
JOHNSON & JOHNSON, INC.;
ANGEL NATAL, IN HIS OFFICIAL AND PERSONAL CAPACITY;
JORGE ROS, IN HIS OFFICIAL AND PERSONAL CAPACITY;
CARLOS OTERO, IN HIS OFFICIAL AND PERSONAL CAPACITY;
AIXA BERRÍOS, IN HER OFFICIAL AND PERSONAL CAPACITY;
XYZ INSURANCE COMPANY,
Defendants, Appellees.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jaime Pieras, Jr., U.S. Senior District Judge]

_____

Before
Boudin, Chief Judge,
Torruella, Circuit Judge,
and Hansen, Senior Circuit Judge.[*]

_____

Carmen Eva García-Cárdenas on brief for appellants.
Carl Schuster, María Santiago-Ramos, and Lourdes C. Hernández-Venegas, of Schuster Usera & Aguiló LLP, on brief for appellees.

_____

May 8, 2006

_____

[*]Of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

**HANSEN**, **Senior Circuit Judge**. Carlos Fontánez-Núñez, his wife Nora Rivera-Cardenales, and the Conjugal Partnership Fontánez-Rivera (collectively "Fontánez") brought suit under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2000h-6, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, claiming gender and age discrimination in employment as well as a hostile environment. The district court dismissed the claims against the individual defendants and granted summary judgment to the corporate defendants, Janssen Ortho LLC and Johnson & Johnson, Inc. (collectively "Janssen"). Fontánez appeals the grant of summary judgment, arguing that the existence of material issues of fact make summary judgment inappropriate. We affirm.

I.

We ordinarily state the facts in a summary judgment context in the light most favorable to the nonmoving party. See Cordero-Soto v. Island Finance, Inc., 418 F.3d 114, 119 (1st Cir. 2005). In this case, however, the district court accepted as true all of Janssen's uncontested facts because Fontánez had failed to oppose Janssen's statement of uncontested facts as required by Local Civil Rule (L.Cv.R.) 56(c) (requiring a party opposing a summary judgment motion to "admit, deny, or qualify the facts by reference to each numbered paragraph of the moving party's statement" and to "support each denial or qualification by a record citation"). See L.Cv.R. 56(e) (stating that facts supported by record citations "shall be

-2-

deemed admitted unless properly controverted"). We recite an abbreviated version of the facts accepted as true by the district court, and we view other facts gleaned from the record in the light most favorable to Fontánez, unless they are inconsistent with the uncontested facts stated by Janssen.

Carlos Fontánez-Núñez worked for Janssen Ortho LLC from July 1996 until his termination in 2001. Throughout those years, he was promoted and received several salary increases. Two of his early positions with the company were in the Quicksolv Department. He reported to Angel Natal who he alleges created a discriminatory and hostile work environment. Specifically, Fontánez said that Natal used foul language and often made sexual and gender-based harassing comments to him or in his presence. He said Natal would call him "gray haired" or would tell him he looked like a certain co-worker who was considered to be slow and incompetent. Fontánez states that co-workers would call him "la cacatua" (the cockatoo) behind his back because of his gray hair. According to Fontánez, Natal also made offensive comments referencing homosexual activity, once noting that Fontánez was a pharmacist and expressing an opinion, in vulgar terms, that all pharmacists are homosexuals. Fontánez stated that co-workers would then call him (Fontánez) gay or would ask him whether he was gay. Fontánez admitted that these incidents occurred in 1997.

In October 1998, Fontánez performed well and was promoted to the position of Quicksolv Project Leader, which gave him supervisory responsibility and a new supervisor, Quicksolv and Engineering Director Luis Guillermo Pérez. Meanwhile, Natal had been transferred to the Packaging Department as Packaging Manager. In 1999, when the company closed its Quicksolv Department, Natal recommended Fontánez for a newly created Packaging Manager position, and the company offered Fontánez the position.

Fontánez's performance as Packaging Manager, however, only marginally met the company's expectations. Fontánez lacked the ability to make prompt decisions and lacked certain basic administrative skills required for the position. During his tenure as Packaging Manager, deficiencies in his performance caused untimely product packaging, in turn resulting in unfulfilled product orders. Additionally, he failed to implement certain measures required for FDA compliance. Natal provided him some informal counseling in areas in which he needed to improve his job performance.

Fontánez asserts that Natal's harassment continued through February 2001, though he was not always Fontánez's direct supervisor. Specifically, sometime in early 2001, Natal allegedly remarked in quite vulgar terms to Fontánez that he (Natal) was looking for a homosexual to engage in sexual relations with him. Fontánez complained that Natal would straighten the front of

-4-

Natal's pants or touch his own buttocks in Fontánez's presence and that Natal continued to use foul and vulgar language in the workplace. Fontánez stated that these actions made him feel nervous, made him put forth a greater effort than others to gain acknowledgment, and made him feel he must speak succinctly at meetings or be told to shut up.

In March 2000, Fontánez's then-supervisor, Aixa Berríos, Packaging and Materials Manager, met with Fontánez to discuss several performance-related issues. She documented his performance deficiencies in writing and advised him that improved performance on his part was necessary to avoid further disciplinary action.

In February 2001, the company eliminated Fontánez's Packaging Manager position as part of its implementation of a plan known as the Lean Manufacturing Process. Rather than terminate Fontánez, the company assigned him to the position of Senior Packaging Process Facilitator, with supervisory authority over approximately thirty-two employees. Berríos remained his supervisor. Due to several deficiencies in Fontánez's job performance, Berríos concluded that Fontánez was not performing the job at an acceptable level of competence. She recommended his termination in March 2001. Carlos Otero, Human Resources Director, reviewed that recommendation, and Jorge Ros, Plant Manager, made the ultimate decision to terminate Fontánez on April 23, 2001. Natal was not

involved in the termination decision and was no longer Fontánez's supervisor at the time of his termination.

At all relevant times, Janssen had well-established policies designed to prevent discriminatory conduct and sexual harassment in the workplace. These policies included a complaint mechanism for employees. Fontánez received a copy of this policy. Although aware of the company's antidiscrimination policies and procedures, Fontánez complained of harassing conduct to a supervisor only once. Fontánez states that he told Pérez of the harassing conduct in 1997. Pérez did not play a role in the decision to terminate Fontánez, and Fontánez did not thereafter use Janssen's sexual harassment policies or its established complaint mechanism.

On May 2, 2001, Fontánez filed a charge of discrimination with the Anti-Discrimination Unit of the Puerto Rico Department of Labor. Fontánez then filed suit in federal court, alleging that he suffered a hostile work environment due to sexual harassment by his supervisor, Angel Natal, and that he was terminated on the basis of his gender and age in violation of Title VII, the ADEA, and Puerto Rico law. The district court granted the plaintiffs' request for voluntary dismissal of the Puerto Rico law claims and issued a partial summary judgment dismissing with prejudice the Title VII and ADEA claims against the individual defendants – Natal, Ros, Otero, and Berríos. Janssen sought summary judgment on the remaining claims. The district court granted Janssen's summary

judgment motion, concluding that many of the acts complained of were time-barred, that Fontánez had not established a prima facie case of age discrimination, and that there was no evidence of actionable sexual harassment or a hostile environment. Fontánez appeals.

## II.

"We review the grant of summary judgment de novo, based on the record as it stood before the district court." Cordero-Soto, 418 F.3d at 118. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." Ingram v. Brink's, Inc., 414 F.3d 222, 228-29 (1st Cir. 2005).

Fontánez attempts to argue on appeal that factual disputes exist to preclude summary judgment, but his argument wholly ignores the district court's decision to deem Janssen's statement of uncontroverted facts as true pursuant to Local Rule 56(e). "This court has held repeatedly that the district court in Puerto Rico is justified in holding one party's submitted uncontested facts to be

admitted when the other party fails to file oppositions in compliance with local rules." Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1st Cir. 2003). "This, of course, does not mean the unopposed party wins on summary judgment; that party's uncontested facts and other evidentiary facts of record must still show that the party is entitled to summary judgment." Id. Because Fontánez does not argue that the district court erred in deeming Janssen's uncontested facts as true, he has waived the issue. See id. at 5. We thus consider the record as it existed before the district court, deeming Janssen's uncontested facts admitted. Id.

Fontánez first asserts that the district court erred in concluding that most of the discrete acts of discrimination alleged are time-barred. We find no error. The district court correctly noted that the administrative charge was filed on May 2, 2001, and consequently held that all discrete actions of harassment or discriminatory conduct occurring before July 25, 2000 (300 days before the claim was filed), are time-barred. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred," and "[e]ach discrete discriminatory act starts a new clock for filing charges . . . within the 180- or 300-day time period after the discrete discriminatory act occurred."); see also 42 U.S.C. § 2000e-5(e)(1) and 29 U.S.C. § 626(d).

Our review of the record convinces us that the district court properly granted summary judgment to Janssen on Fontánez's claims of gender and age discrimination in his termination. Fontánez has presented no direct evidence of age or gender discrimination and must therefore raise an inference of discrimination through the familiar McDonnell Douglas burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). See Rivera-Aponte v. Restaurant Metropol # 3, Inc., 338 F.3d 9, 11 (1st Cir. 2003). Under this framework, to raise an inference of either age or gender discrimination sufficient to withstand summary judgment, it is necessary for a plaintiff to demonstrate, inter alia, that his or her job performance met the employer's legitimate expectations. See, e.g., Hoffman v. Applicators Sales and Serv., Inc., 439 F.3d 9, 17 (1st Cir. 2006)(stating the elements for a prima facie case of age discrimination); Smith v. Stratus Computer, Inc., 40 F.3d 11, 15 (1st Cir. 1994)(stating the elements for a prima facie case of sex discrimination), cert. denied, 514 U.S. 1108 (1995). Fontánez cannot make this showing. The undisputed evidence establishes that Fontánez's job performance was not meeting his employer's legitimate expectations at the time of his termination.

Fontánez attempts to justify his job performance by asserting disputed facts in his argument to this court. The facts of Janssen's statement of uncontested facts, however, are deemed

admitted and may not now be controverted. The record demonstrates that Fontánez held five different positions with Janssen, each with a higher salary than the last, but he did not perform well in the last two positions. Janssen appointed Fontánez to the Process Facilitator position rather than fire him when his prior position was eliminated, Fontánez was aware of the responsibilities of the job when he accepted the position, and Janssen terminated Fontánez for unacceptable performance of those responsibilities in several respects. Accordingly, the district court properly granted summary judgment on Fontánez's age and gender discrimination claims.

Even putting aside the prima facie case, as we have often done, and turning "instead, to whether there is evidence that, notwithstanding the employer's stated reasons for the termination, the real reason, at least in part, was age and gender discrimination," Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 31 (1st Cir. 2003), we conclude that summary judgment was proper. There is no evidence from which to conclude that the proffered reason for his termination was not in fact the real reason. Fontánez has not presented evidence from which to conclude that Janssen's job expectations were illegitimate. Additionally, he has not presented any evidence to demonstrate that either age or gender discrimination was the real reason for the termination – or even a motivating influence in the decision. See Hoffman, 439 F.3d at 17-

18 (citing <u>Reeves</u> v. <u>Sanderson Plumbing Prods.</u>, 530 U.S. 133, 141 (2000)).

Fontánez also claims that he suffered sexual harassment and a hostile work environment based on conduct by his supervisor, Natal, and co-workers. Natal did not participate in the decision to terminate Fontánez, and Fontánez does not claim that he was constructively discharged due to the harassing conduct. "[When] a supervisor's harassment did not result in a tangible employment action against an employee, then the employee must show that the harassment was so 'severe or pervasive' that, in essence, it altered the terms or conditions of her [or his] employment." <u>Lee-Crespo</u> v. <u>Schering-Plough Del Caribe Inc.</u>, 354 F.3d 34, 46 (1st Cir. 2003) (quoting <u>Burlington Indus., Inc.</u> v. <u>Ellerth</u>, 524 U.S. 742, 752 (1998)). "The employer is then vicariously liable . . . unless the employer can successfully assert the affirmative defense" that it took reasonable care to promptly correct the situation or that the plaintiff unreasonably failed to take advantage of the corrective or preventive measures provided by the employer. <u>Id.</u> (citing <u>Ellerth</u>, 524 U.S. at 765). "[W]here the harassment is by a non-supervisory co-worker, the employer is liable only if the plaintiff can show that the employer knew or should have known of the charged . . . harassment and failed to implement prompt and appropriate action." <u>Arrieta-Colon</u> v. <u>Wal-</u>

<u>Mart Puerto Rico, Inc.</u>, 434 F.3d 75, 85-86 (1st Cir. 2006) (internal quotation marks omitted, alteration in original).

We consider all of the circumstances "in determining whether a work environment is sufficiently hostile or abusive, including 'the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" <u>Lee-Crespo</u>, 354 F.3d at 46 (quoting <u>Harris</u> v. <u>Forklift Sys.</u>, 510 U.S. 17, 23 (1993)). A hostile work environment claim is composed of a series of separate acts, but as long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." <u>Morgan</u>, 536 U.S. at 117.

We agree with the district court's assessment that the facts of this case do not rise to the level of severity or pervasiveness considered to be actionable. Natal's purported continued use of objectionable language and vulgar remarks in Fontánez's presence were, according to Fontánez, often directed to many employees in the area or described Natal's own conduct. While the vulgar language was inappropriate to the workplace and completely unprofessional, mere offensive utterances that did not unreasonably interfere with the employee's work performance do not amount to harassment that in essence altered the terms or conditions of

-12-

Fontánez's employment. See Lee-Crespo, 354 F.3d at 46-47 ("[A] supervisor's unprofessional managerial approach . . . [is] not the focus of the discrimination laws."). Considering the whole record, we cannot find that "the workplace [wa]s permeated with discriminatory intimidation, ridicule, and insult that [wa]s sufficiently severe or pervasive to alter the conditions of [Fontánez's] employment and create an abusive working environment." Morgan, 536 U.S. at 116 (internal quotation marks omitted).

Additionally, the undisputed facts establish that Janssen had well established antiharassment and antidiscrimination policies that included procedures for employees to follow in airing grievances and that Fontánez failed to take advantage of these procedures. Janssen's statement of undisputed facts establishes that Fontánez's only complaint to a manager occurred in 1997, and he did not thereafter make use of the company's complaint procedures. Fontánez attempts to contradict that fact, asserting on appeal that he "sought help through the years from the superiors regarding the discrimination he was suffering at the hands first of Natal and then of Natal, Berríos and the others, but no one paid attention." (Appellants' Br. at 11.) On the record before us, including the facts deemed admitted, Fontánez cannot now assert that he made timely complaints which were ignored. The district court properly granted summary judgment on the sexual harassment and hostile work environment claims.

III.

The judgment of the district court is **<u>affirmed</u>**.