**Miguel CARDONA, Plaintiff**

v.

**John POTTER, Defendant.**

**Civil No. 06–1158(SEC).**

United States District Court,
D. Puerto Rico.

Feb. 29, 2008.

Elaine Rodriguez–Frank, San Juan, PR, for Plaintiff.

Ginette L. Milanes, Rebecca Vargas–Vera, United States Attorney's Office, San Juan, PR, for Defendant.

## OPINION AND ORDER

SALVADOR E. CASELLAS, Senior District Judge.

Before the Court is Defendant's Motion for Summary Judgment (Docket # 24) and Plaintiff's opposition thereto (Docket # 29). After reviewing the parties' filings, the evidence in the record and the applicable law, Defendant's Motion for Summary Judgment (Docket # 24) will be **GRANTED.**

### Standard of Review

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *Ramírez Rodríguez v. Boehringer Ingelheim,* 425 F.3d 67, 77 (1st Cir.2005). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that

party's favor." *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" *Depoutot v. Raffaelly*, 424 F.3d 112, 116 (1st Cir.2005) (*quoting, Garside*, 895 F.2d at 48 (1st Cir. 1990)). By like token, "material" "means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *Rojas–Ithier v. Sociedad Española de Auxilio Mutuo*, 394 F.3d 40, 42–43 (1st Cir.2005) (citations omitted). Therefore, there is a trial-worthy issue when the "evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is sufficiently open-ended to permit a rational fact-finder to resolve the issue in favor of either side." *Id* (citations omitted).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. *See, Hadfield v. McDonough*, 407 F.3d 11, 15 (1st Cir.2005) (*citing, Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir.1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the party opposing summary judgement must present definite, competent evidence to rebut the motion. *Méndez–Laboy v. Abbott Lab.*, 424 F.3d 35, 37 (1st Cir.2005) (*quoting, Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir.1994)).

"The nonmovant must produce specific facts, in suitable evidentiary form sufficient to limn a trialworthy issue.... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States*, 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Muñoz*, 896 F.2d at 8, (*quoting, Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve").

## Factual and Procedural Background

Plaintiff is Miguel Cardona, an employee of the United States Postal Service (USPS), the Defendant in this case. His only allegation is that Defendant discriminated against him because he was married to another USPS' employee, however he catalogues this discrimination as discrimination based on sex. He seeks monetary and injunctive relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000, et seq. Docket # 1, ¶ 1, and the United States Constitution.

## Uncontested Facts

The Court first notes that Plaintiff's opposition to USPS' Motion for Summary

Judgment completely disregarded Local Rule 56's mandate.

Local Rule 56(b) provides that

"[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposition shall **admit, deny or qualify** the facts **by reference to each numbered paragraph** of the moving party's statement of material facts and unless a fact is admitted shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain **in a separate section additional facts, set forth in separate numbered paragraphs** and supported by a record citation as required by subsection (e) of this rule." (Our emphasis).

Notwithstanding the clear language of the aforementioned rule, Plaintiff ran afoul of it and filed an opposition to the USPS' Statement of Uncontested Facts, proposing instead an alternate version of the facts without admitting, denying or qualifying the USPS' proposed facts. *See,* Docket # 30. Therefore, Plaintiff's statement laid a heavy, and extra, burden on the Court's shoulders, since the Court would have to determine which of Plaintiff's proposed facts were meant to deny the USPS' proposed facts, which were meant to merely qualify them, and which were additional facts proposed by him. Furthermore, many of the facts proposed by the Plaintiff were not supported by a record citation as required by Local Rule(e). *See,* Docket # 30, ¶¶ 3, 7, 12–13, 16 & 23.

 "Rules like Local Rule 56 are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." *Cabán Hernández v. Philip Morris USA, Inc.,* 486 F.3d 1, 8(1st Cir.2007).

When the parties ignore the Local Rule, they do so at their peril. *See, Ruiz Rivera v. Riley,* 209 F.3d 24, 28 (1st Cir.2000). As such, the Court will deem as admitted all of the facts proposed by the USPS, because they were supported by the record and were not properly controverted by the Plaintiff. This solution is consistent with Local Rule 56, and First Circuit precedent. *See, Philip Morris,* 486 F.3d 1, 8 (stating that "the district court acted justifiably in rebuffing the appellants' proffered counter-statement and crediting Phillip Morris' version of the facts; [since] the appellants **did not admit, deny or qualify** Phillip Morris' assertions of fact **paragraph by paragraph** as required by Local Rule 56 ... Instead, they submitted an alternate statement of facts in narrative form. This failing alone would have warranted a deeming order."); *see also, Fontánez–Núñez v. Janssen Ortho LLC,* 447 F.3d 50, 55 (1st Cir.2006)("the district court in Puerto Rico is justified in holding one party's submitted uncontested facts to be admitted when the other party fails to file oppositions in compliance with local rules.")

The following is Plaintiff's tale as narrated by the record.

Plaintiff started working for the USPS as a part-time flexible (PTF) mail handler in the General Post Office in San Juan, Puerto Rico. Docket # 25–2, ¶ 1 (hereinafter SUF ¶ X). On May, 2003, Plaintiff was awarded a position as a PTF letter carrier and was stationed at the Loíza Street Station. SUF ¶ 2. Plaintiff's wife, Lizette Cardona, is also employed by the USPS, and, at all times relevant to the complaint, worked at the Barrio Obrero Station, a branch of the Loíza Street Station. SUF ¶ 3.

Pursuant to the Collective Bargaining Agreement (CBA) between the USPS and the National Association of Letter Carri-

ers, when a residual vacancy route becomes available, USPS is required to assign a regular-time employee to the route before any other employee. SUF ¶ 4. However, if there are no unassigned regular employees at the time, then the USPS must resort to the senior PTF employees in order of seniority. *Id.* As such, when there are no unassigned regular employees, the PTF with more seniority is converted to a full-time regular employee and assigned the vacant. *Id.*

In or around November 2004, the USPS had a residual vacancy at the 65th Infantry Station for which there were no unassigned regular employees, and Plaintiff was, at that time, the most senior of the PTF's employees. SUF ¶ 5. On November 12, 2004, Plaintiff was notified by letter that he had been converted to a full-time regular employee and effective November 27, 2004 was to be assigned to a full-time position at the 65th Infantry Station. SUF ¶ 6. However, under the CBA, the USPS management at the Loíza Street Station had the option of immediately sending Plaintiff to his new location or retaining him at their station for up to two weeks after the assignment effective date, which is known as a hold down. SUF ¶ 8. Plaintiff was held over at the Loíza Street Station until two weeks past his reassignment's effective date. *Id.*

During the two weeks that Plaintiff was held over at the Loíza Street Station he told his supervisor, José C. Núñez, that he wanted to continue working at that station and that José Torrent, another carrier at the 65th Infantry Station, wanted to swap positions with him. SUF ¶ 9. Notwithstanding Plaintiff's allegations, Mr. Torrent told the Union and management that he had not agreed to swap positions with Plaintiff, and was not aware of any agreement to do so. SUF ¶ 10. Plaintiff then filed for a rescission of his appointment to

the 65th Infantry Station all the way into January, 2005. SUF ¶ 11. On January 7, 2005, Plaintiff failed to call in or report to work, SUF ¶ 12. The next day, Plaintiff telephoned his supervisor and reported that his daughter had fallen and broken her clavicle the previous day. However, during that conversation, Plaintiff admitted that his daughter had not fallen until the afternoon of January 7, 2005. SUF ¶ 13. On January 9, 2005, when Plaintiff reported to work his supervisor told him not to clock in. SUF ¶ 14. Instead, Plaintiff was told to report to a meeting between himself, the union and the USPS management to discuss why he did not call in to report his absence on January 7, 2005, since Plaintiff was only granted permission to take leave on January 5, 2006. SUF ¶¶ 14 & 15. Plaintiff did not report to work at the 65th Infantry Station until January 22, 2005.

Finally, the USPS guarantees full-time regular employees will work forty hours per week, while PTF's only work twenty. SUF ¶ 7.

## Applicable Law and Analysis

*Title VII: Sex Discrimination*

Title VII of the Civil Rights Act, "makes it an unlawful employment practice to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex." *See,* 42 U.S.C. § 2000e–2(a)(1); *see also, Harris v. Forklift,* 510 U.S. 17, 20, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)(hereinafter *Harris* ).

Plaintiff's Title VII claim apparently arises out of his transfer to the 65th Infantry position, and his supervisor telling him not to clock in in a humiliating manner in front of other employees. Defendant moved for the entry of summary judgment on three grounds: (1) that Plaintiff cannot establish a prima facie case of discrimina-

tion; (2) in the alternative, that his transfer to the 65th Infantry Station was mandated by the CBA, and, as such it has satisfied its burden of production under the *McDonnell Douglas* "burden-shifting framework; and (3) that Plaintiff's allegations with regards to a violation of his constitutional rights are conclusory and must fail. Plaintiff's memorandum of law only argues the existence of a hostile work environment because he was married to another USPS" employee.

 We first note, as Defendant did, that Title VII does not protect against discrimination on the basis of marital status. However, putting this fact aside, Plaintiff has failed to make out a *prima facie* case of discrimination. In order to succeed under the rubric of hostile environment, a plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). "The focus of hostile work environment cases is ... [that] the work environment must be severely abusive, subjectively and objectively". *Rivera–Martinez v. Commonwealth of Puerto Rico*, 2007 WL 16069 at p. 2 (1st Cir.2007). Although there is no mathematically precise test, in order to determine whether an environment is hostile or abusive, the Court must look at all the circumstances, which may include: (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether it is physically threatening or humiliating, (4) whether it was just a mere utterance, and (5) whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23, 114 S.Ct. 367; *see also, Marrero v. Goya of Puerto Rico*, 304 F.3d 7, 18–19(1st Cir.2002)(hereinafter

*Goya* ); *Lee–Crespo v. Schering–Plough Del Caribe, Inc.*, 354 F.3d 34, 46 (1st Cir.2003)(hereinafter *Lee–Crespo* ); *Pomales v. Celulares Telefónica, Inc.*, 447 F.3d 79, 83 (1st Cir.2006)(hereinafter *Pomales* ). Although this inquiry is fact-specific, and, as such, reserved for a fact-finder, "summary judgment is an appropriate vehicle for policing the baseline for hostile environment claims." *Pomales,* 447 F.3d at 83.

 Plaintiff's only allegation with regards to a hostile work environment is that his supervisor "while Plaintiff was picking up his time card, ... shouted to him 'Don't dare to clock in.' All the mail carriers were present. Plaintiff felt humiliated and started crying ... [Núñez] did not apologize nor offer (sic) any explanation for his behavior." *See,* Docket # 1, ¶¶ 10 & 14. The Court agrees with the USPS in that, despite the dubious merits of Plaintiff's protected status as a married person under Title VII, this one incident is not sufficiently severe to constitute hostile work environment on the basis of sex. Even if Plaintiff believed, subjectively, that this conduct was sufficiently severe, and motivated by his "sex", it fails to pass the objectivity test of Title VII. *See, Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)("[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.") Furthermore, there is no evidence in the record that Plaintiff's supervisory was not as rude with other non-married employees as he was with the Plaintiff that particular day. To the contrary, Plaintiff's own memorandum of law states that "Mr. Núñez was even suspended from work and ban (sic) from supervising other employees. Mr. Acevedo has

more than 140 grievances filed by his employees at the Loíza Street Station." Docket # 29, p. 3. As such, there is no evidence in the record that the conduct of Plaintiff's supervisor was motivated by his discriminatory animus toward the Plaintiff.

Plaintiff also recognizes that this incident was an isolated one. In his memorandum of law he says:

"[e]ven though, the incident described by Plaintiff and his witness appears to be an isolated event, in our facts the comments and actions of Defendant are so pervasive and sufficiently severe, that this honorable Court must conclude that Plaintiff was a victim of a hostile work environment. This incident took placed (sic) before most of his co-workers and left him totally humiliated."

Docket # 29, p. 5. Although Plaintiff could have felt humiliated by the conduct of his supervisor towards him, this conduct was not, objectively speaking, severe enough to constitute a hostile work environment under Title VII.

The only remaining allegation of discrimination in Plaintiff's complaint is that the USPS apparently assigned him to another station because of his sex/marital status.

█ When a party lacks direct evidence of gender discrimination, the plaintiff must "raise an inference of discrimination through the familiar *McDonnell Douglas* burden shifting framework." *Fontánez–Núñez*, 447 F.3d at 55. Under this framework, the Plaintiff must establish a *prima facie* case of discrimination, by proving, (1) that he was the member of a protected class, (2) that he met the employer's legitimate performance expectations, (3) was adversely affected, (4) was replaced by another with similar skills and qualifications. *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 56 (1st Cir.1998). Although we seriously doubt that Plaintiff

married status constitutes a protected class within Title VII, the Court will assume, *arguendo*, that it is. However, the record is completely lacking in evidence of an adverse employment action against the Plaintiff. First, he was a Part–Time Flexible employee who only worked twenty hours a week; after the reassignment to the 65th Infantry Station, he was guaranteed forty hours. *See*, SUF ¶ 7. We believe that his change was beneficial to the Plaintiff rather than adverse. Plaintiff has presented no evidence that he was unable to work for forty hours a week, and as such, we fail to see how the increase was adverse to him.

█ Furthermore, Defendant has presented a non-discriminatory reason, and a compelling one, to Plaintiff's reassignment to the 65th Infantry Station: that, according to the CBA, Plaintiff was the next in line to fill any vacancy for a regular employee. *See*, SUF ¶¶ 4–6. Therefore, we conclude that Plaintiff has failed to make out a *prima facie* case of discrimination, and in any event, the USPS' employment action to transfer Plaintiff to the vacancy at the 65th Infantry Station was based on a non-discriminatory and legitimate reason.

█ We will like to reiterate at this point, that Plaintiff's complaint is utterly lacking in merit and blatantly ignored the clear case law interpreting Title VII. Actions complained of by Title VII plaintiffs must be "materially [adverse]; ... it is important to separate significant from trial harms, [since] Title VII, ... does not establish a general civility code for the American workplace." *Oncale*, 523 U.S. at 80, 118 S.Ct. 998. As such, disgruntled employees must understand that their discontentment, in and of itself, does not give rise to a Title VII cause of action. There-

fore, Plaintiff's claims under Title VII are hereby **DISMISSED with prejudice.**

*Constitutional Claims*

██ Plaintiff's complaint avers that "Defendant's conduct has denied and will continue to deny Plaintiff's equal protection and civil rights guaranteed by the Constitution and Laws of the United States." Docket #1, p. 4. The USPS moves to dismiss this claim because Plaintiff's complaint lacks specificity as to what constitutional rights were violated. We agree. Plaintiff's complaint failed to plead a constitutional claim. Furthermore, his memorandum did not even attempt to create a well-structured argument, as to why his constitutional rights have been violated. As such, the Court will disregard this claim entirely. It is well settled law that "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones ... [j]udges are not expected to be mindreaders[;] a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace." *U.S. v. Zannino,* 895 F.2d 1 (1990); *see also, Casillas–Díaz v. Palau,* 463 F.3d 77 (1st Cir. 2006)(same).

In the summary judgment stage, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. *See, Hadfield,* 407 F.3d at 15; *Medina–Muñoz,* 896 F.2d at 8. Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgement as a matter of law, the party opposing summary judgment must present definite, competent evidence to rebut the motion. *Méndez–Laboy v. Abbott Lab.,* 424 F.3d 35, 37 (1st Cir.2005) (*quoting, Maldonado–Denis v. Castillo-*

*Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994)). Plaintiff has failed to fight against the summary judgment machinery, and has lost.

As such, Plaintiff's constitutional claims are hereby **DISMISSED with prejudice.** Judgment shall be entered dismissing Plaintiff's complaint.

Finally, we note that Plaintiff's complaint was poorly drafted and totally lacking in merit. We remind Counsel for Plaintiff that, according to the Federal Rules of Civil Procedure, she needs to review the facts of the case as well as the elements of each cause of action asserted in a complaint before filing it. Such review is required by Fed.R.Civ.P. 11(b)(3), which states in part that

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> . . . . .
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Counsel's compliance with the cited rule is necessary in order to avoid unnecessary litigation and the attendant expense (measured in both time and resources) to the Court and the opposing parties.

**SO ORDERED.**