Carmen V. MENENDEZ TORRES, Plaintiff,

v.

AMERICAN EXPRESS COMPANY, et al., Defendants.

Civil No. 06–1712(GAG).

United States District Court, D. Puerto Rico.

July 7, 2008.

Enrique J. Mendoza–Mendez, Esq., San Juan, PR, for Plaintiff.

Jose R. Garcia–Perez, A.J. Bennazar–Zequeira, San Juan, PR, for Defendants.

## OPINION AND ORDER

GUSTAVO A. GELPI, District Judge.

Plaintiff Carmen V. Menendez Torres ("Menendez") filed this suit alleging age discrimination under the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. § 623 et seq., and retaliation due to sex discrimination under Title VII, 42 U.S.C. § 2000e–2 et seq., as well as various state law claims. Defendants American Express Company and American Express Travel Related Services (hereinafter collectively either "American Express" or

"defendants") timely moved for summary judgment solely on the ADEA and Title VII causes of action arguing that plaintiff did not establish a prima facie claim for either cause of action (Docket No. 30). Plaintiff responded to said motion wherein she advised the court that she will no longer pursue her Title VII claim (Docket No. 35). Therefore, the court hereby **DISMISSES** the Title VII cause of action with prejudice. Moreover, after a thorough review of all pleadings and pertinent law, the court **DENIES** defendants' motion for summary judgment (Docket No. 30).

## I. Standard of Review and Local Rule 56

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). When deciding a motion for summary judgment, the court must view the record in the light most favorable to the party opposing summary judgment, including all reasonable inferences in the nonmoving party's favor. *See id.* "If, after canvassing the material presented, the district court finds *some* genuine factual issue remains in the case, whose resolution one way or the other *could* affect its outcome, the court must deny the motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added). "The movant's burden is particularly rigorous when the disputed issue involves questions of motive or intent, since in these cases jury judgments about credibili-

ty are typically thought to be of special importance." *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 895 (1st Cir.1988).

Local Rule 56(b) requires a party moving for summary judgment to file "a separate, short, and concise statement of material facts ... as to which the moving party contends there is no genuine issue of material fact to be tried." D.P.R. L.Civ.R 56(b). The movant must support each statement with a citation to the record. *See id.* The nonmovant has a corresponding obligation to submit with its opposition "a separate, short, and concise statement of material facts" in which it admits, denies, or qualifies the moving party's facts with reference to each numbered paragraph of the moving party's statement. D.P.R. L.Civ.R 56(c). Additionally, the nonmoving party must support each denial or qualification with a record citation. *See id.* While a nonmovant's failure to comply with this rule does not automatically warrant the granting of summary judgment, "parties ignore [the rule] at their peril." *Ruiz Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir.2000). The First Circuit has repeatedly held that the district court is justified in deeming one party's submitted uncontested facts to be admitted when the other party fails to file an opposition in compliance with Local Rule 56. *See, e.g., Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir.2007); *Fontanez–Nunez v. Janssen Ortho LLC*, 447 F.3d 50, 55 (1st Cir.2006); *Torres–Rosado v. Rotger–Sabat*, 335 F.3d 1, 4 (1st Cir.2003); *Corrada Betances v. Sea–Land Serv., Inc.*, 248 F.3d 40, 43–44 (1st Cir.2001); *see also* D.P.R. L.Civ.R 56(e) (declaring facts not properly controverted "shall be deemed admitted").

In this case, both parties failed to comply with Local Rule 56. American Express did not file a separate statement of facts as required by the rule, and instead

listed the facts in the body of the motion for summary judgment. *See* Docket No. 30. Menendez did comply with Local Rule 56(c) by filing a reply admitting, denying or qualifying each of defendants' proposed uncontested facts. *See* Docket No. 37. However, instead of filing a separate statement of additional facts with proper reference to the record, Menendez incorporated the additional facts within her response to defendants' facts, as well as, in the Response to Motion for Summary Judgment. *See* Docket Nos. 35 and 37. American Express did not admit, deny or qualify plaintiff's additional assertions. *See* D.P.R. Local Rule 56(d).

## II. Relevant Material Facts and Procedural Background

The court derives the following factual summary primarily from the parties' statements of material facts. *See* Docket Nos. 30, 35 and 37. Consistent with the summary judgment standard, the court states the facts in the light most favorable to the plaintiffs. *See Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir.2006).

Menendez started working for American Express in 1973 as a secretary. After graduating from the University of Puerto Rico with a Bachelor's degree in Psychology in 1976, American Express promoted her to Manager for the Travelers Cheque and Money Order Division in the Caribbean region. Then, in 1980, Menendez became Regional Manager for the Caribbean region. In 1990, American Express named Menendez Manager of the Corporate Card for Puerto Rico and the U.S. Virgin Islands, and three years later Manager of Operations for the Puerto Rico Service Center and Corporate Card Sales in Puerto Rico. In 1995, American Express promoted Menendez to Regional Manager of the Business Development for the Global Corporate Services ("GCS") in Puerto Rico, U.S. Virgin Islands and Dominican Republic. Menendez received numerous awards and recognitions during her tenure at American Express, including being named to the GCS Hall of Fame in 2002. Menendez held the highest position in the GCS line of business of the Puerto Rico region, and thus reported to Guillermo Brenes ("Brenes"), Vice President in Miami, Florida. She received annual salary increases based on her good or excellent performance evaluations. The evaluations note that Menendez is willing to relocate immediately to the United States, Europe or Latin America.

On August 9, 2005, Menendez received a letter from Brenes, which stated that her position was being eliminated due to a reduction in force caused by current business conditions, and her active employment with American Express would end effective October 14, 2005. On August 14, 2005 Brenes met with Menendez and informed her that a new Director position would replace her Regional Manager position, which would include additional duties with emphasis in finance and the overseeing of the Profit and Loss Statement for the region. Menendez expressed interest in the Director position, but Brenes told her that based on her formal education and prior experience at American Express, she did not qualify. Brenes then advised Menendez to apply for virtual positions, which allowed Menendez to work from home, but some of the positions actually required Menendez to move to the Northeast of the United States. During the meeting Brenes gave Menendez a severance package that required her to sign an Agreement and Release, which she never accepted.

The Regional Manager position was a Band 35 and the new Director position was classified as a Band 40 due to the change of duties. American Express alleges to

have followed a standard process of evaluating the Regional Manager position and the new Director position. At the conclusion of the process, American Express decided to eliminate the former position because the new position required a more than fifty percent change in scope and duties. Brenes stressed to Menendez that the emphasis in finance and profit and loss evaluations was the main reason for the change in Band, and the reason that she was not qualified. These duties encompass ten percent of the Director's job description, and are the sixth out of nine major responsibilities listed in descending order of importance.

The October 2005 reorganization memorandum detailed the positions and personnel involved. Menendez was the only person displaced during the American Express' reorganization. American Express created two additional positions during the reorganization, a new Analyst and a new Account Executive. Menendez was not placed in either position. Brenes asserted to upper management that Menendez was not willing to relocate. The internal documents that showed Menendez' displacement included her age at the time, 56 years old. Three new Band 35 positions became available in Puerto Rico after Menendez' displacement. American Express did not contact or place Menendez in any of the them. The new Band 35 hires were respectively twenty-seven, thirty-five and thirty-seven years old at the time.

Menendez did not apply for the new Director position, or any other position with American Express immediately after her displacement, because her psychiatrist placed her on medical leave with a diagnosis of depression beginning on August 23, 2005 and ending on October 18, 2007. American Express selected Sonia Rodriguez ("Rodriguez") for the new Director position. Rodriguez was approximately forty-five years old at the time, had worked eight years as Manager for American Express, and her education consisted of a degree in Tourism Administration from the Escuela de Artes y Letras, a technical school in Bogota, Colombia. On October 22, 2007, Menendez wrote a letter to American Express advising that she was able to return to work and needed access to a corporate computer in order to apply to available internal job postings. Menendez then applied to four Band 30 positions, below manager, but was not selected for any of them. Menendez is currently not receiving a salary from American Express.

### III. Legal Analysis

■ The ADEA makes it illegal for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). If relying on circumstantial evidence to prove age discrimination, the plaintiff must prove his case using the *McDonnell Douglas* burden-shifting framework. *Rivera–Aponte v. Rest. Metropol # 3, Inc.*, 338 F.3d 9, 11 (1st Cir.2003). Under this analysis, a plaintiff establishes a prima facie claim of age discrimination by showing that: (1) she was at least 40 years old; (2) she met the employer's legitimate performance expectations; (3) she experienced an adverse employment action; and (4) the employer had a continuing need for the services previously provided by the plaintiff. *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000). The burden of production then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir.1995). If the defendant offers such a reason, the final burden of

persuasion rests with the employee to show, by a preponderance of the evidence, that the reason proffered by the employer is merely a pretext and the real motivation for the adverse employment action was age discrimination. *Id.* at 1091–92.

American Express avers that Menendez was not terminated, therefore, there was no adverse employment action, and thus she cannot establish a prima facie case of age discrimination. Determining whether an action is adverse entails a case-by-case inquiry. *Blackie v. State of Me.,* 75 F.3d 716, 725 (1st Cir.1996). In *Blackie,* the First Circuit provided some guidance as to what constitutes an adverse employment action: "[t]he employer must either (1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities, ... or (2) withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service." *Id.* at 725–26 (internal citations omitted).

■ Defendants' argument is not persuasive. Menendez clearly suffered an adverse employment action when her position of Regional Manager was suddenly eliminated and she was displaced without being reassigned within the company. The *termination letter* stated that her active employment with American Express would end effective October 14, 2005. After over 30 years of service, Menendez was out of work and left with the choices of either applying to available positions or taking the severance package and leaving the company. After being discharged, Menendez was not considered for the Director position despite her great evaluations, extensive experience with American Express in the Puerto Rico market, and seniority status in the region. Moreover,

Menendez is currently not working for American Express despite being allowed to do so by her psychiatrist, and she is also not receiving a salary from American Express. Therefore, Menendez has proffered sufficient evidence that she suffered an adverse employment action.

■ In the alternative, American Express alleges that their decision to eliminate the Regional Manager position and replace it with the Director position was based on their legitimate business judgment. The only document that American Express produced to support their contention that the Regional Manager and Director positions were over fifty percent different is an affidavit from a human resources employee. However, Menendez presented evidence that the difference between the two positions is not over fifty percent because the emphasis in finance and profit and loss statement review is only ten percent of the Director's job description. Brenes told Menendez she was not qualified before she even applied for the position. Yet Menendez proffered evidence that Rodriguez is younger, has far less managerial experience and a lesser education degree, which supports Menendez' contention that Rodriguez is less qualified for the Director position. American Express alleges that Menendez Bachelor's degree in Psychology does not qualify her for the Director position, yet Rodriguez does not even have a university degree. All of these factors combine to bolster Menendez' argument that American Express' reason is actually pretext for age discrimination.

Furthermore, American Express' termination letter referred to Menendez' discharge as due to a reduction in force, yet she was the only employee terminated due to the reorganization. Even more incongruous with defendants' argument is the fact that two new positions were created

during the reorganization, and despite Menendez' vast experience and excellent evaluations she was not given either of them. Brenes asserting to upper management that Menendez would not relocate seems at least suspicious because her yearly performance evaluations note that she is willing to relocate immediately to the United States, Europe or Latin America. Also, the presence of Menendez' age in the termination documents could lead the trier of fact to conclude that age discrimination was a factor in her termination, and American Express' business reorganization reason is merely pretext. It is definitely noteworthy that Rodriguez and the other Band 35 three employees hired after Menendez' termination were much younger than her. Viewed in their totality, Menendez has presented enough evidence to sustain her argument that American Express' reasons for her termination are pretextual and in actuality their decision was due to age discrimination.

## IV. Conclusion

Due to the aforementioned reasons, the court **DENIES** defendants' motion for summary judgment (Docket No. 30) and **DISMISSES** the Title VII cause of action with prejudice.

**SO ORDERED.**