[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11634
Non-Argument Calendar
_____

D.C. Docket No. 3:10-cv-00083-CAR

JOE A. BARNETT,

Plaintiff-Appellant,

versus

ATHENS REGIONAL MEDICAL CENTER INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(December 16, 2013)

Before DUBINA, WILSON, and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Joe A. Barnett, proceeding with counsel, appeals the district

court's grant of summary judgment to Athens Regional Medical Center

("ARMC"), Barnett's former employer, in Barnett's action for (1) age and race discrimination and (2) retaliation, brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 691, *et seq.*; Title VII, 42 U.S.C. § 2000e-2, *et seq.*; and 42 U.S.C. § 1981 ("§ 1981"). The district court granted summary judgment to ARMC on the basis that Barnett had not established, on either of the claims, a *prima facie* case on the element of an adverse employment action.

## I. Discrimination

Barnett contends that his written caution, his written warning, and his 2009 performance evaluation amounted to adverse employment actions. Barnett argues that the inference could be drawn that an unsatisfactory score on his evaluation precluded him from getting a merit increase.

We review *de novo* a district court's grant of summary judgment. *Crawford v. Carroll*, 529 F.3d 961, 964 (11th Cir. 2008). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing a genuine issue of material fact. *See* Fed.R.Civ.P. 56(c), (e). Such evidence must consist of more than mere conclusory allegations or legal

conclusions. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). When ruling on a motion for summary judgment, any inferences must be viewed in the light most favorable to the party opposing the motion. *Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir. 1992).

Title VII makes it unlawful for an employer to retaliate against an employee for his participation in certain statutorily protected activities:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

First, the plaintiff must establish a *prima facie* case, and if the plaintiff does so, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). If the employer meets this burden, the plaintiff then has an opportunity to show that the employer's proffered reasons for the adverse employment action were merely pretext for discrimination. *Id.* at 253, 101 S.Ct. at 1093.

Because Title VII, the ADEA, and § 1981 "have the same requirements of proof and use the same analytical framework" for determining whether a plaintiff has made a *prima facie* showing of either (1) adverse employment action, or

3

(2) retaliation, we will analyze the claims together. *Standard v. A.B.E.L. Serv., Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998) (analogizing the analytical framework used for Title VII to that used in § 1981 claims); *see Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (giving the modified *prima facie* elements required under the ADEA, including that there be an adverse employment action).

Generally, a plaintiff may establish his "prima facie case of disparate treatment by showing that [he] was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1087 (11th Cir. 2004) (citations omitted).

We have held that "memoranda of reprimand or counseling that amount to no more than a mere scolding, without any following disciplinary action, do not rise to the level of adverse employment actions sufficient to satisfy the requirements of Title VII." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1236 (11th Cir. 2001) (quotation and alteration omitted). The negative evaluation must actually lead to a material change in the terms or conditions of employment, such as "an evaluation that directly disentitles an employee to a raise of any significance." *Gillis v. Georgia Dept. of Corr.*, 400 F.3d 883, 888 (11th Cir. 2005). Although proof of direct economic consequences is not required in all

4

cases, "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Davis,* 245 F.3d at 1239.

In this case, we conclude from the record that Barnett has failed to establish his *prima facie* case of discrimination because he was not subjected to an adverse employment action. The written reprimands and negative performance review had no effect on Barnett's employment. Indeed, Barnett admitted that his two written reprimands did not result in his termination, demotion, suspension, a reduction in pay, or a change in job duties. Barnett also admitted that neither of the written warnings he received would have prevented an employee from receiving a merit raise. Further, Barnett could only speculate that his employer might have considered these as grounds for future adverse employment action. *See Davis,* 245 F.3d at 1239. Barnett argued that the written reprimands and the negative performance evaluation were steps in Defendant's progressive disciplinary policy which could have led to harsher disciplinary action. However, he could not establish that these actions actually led to any tangible effect on his employment. Both Title VII and the comparable language in the ADEA "focuses on the *effects* of the action on the employee rather than the motivation of the employer." *Smith v. City of Jackson*, 544 U.S. 228, 235-36, 125 S.Ct. 1536, 1542, 161 L.Ed.2d 410 (2005) (emphasis in the original). Thus, he did not discharge his burden. Fed.R.Civ.P. 56(c); *see Avirgan*, 932 F.2d at 1577. Moreover, inferences based on

5

speculation and conjecture are not reasonable. *Avenue CLO Fund, Ltd. v. Bank of Am., NA*, 723 F.3d 1287, 1294 (11th Cir. 2013). Thus, based on the above, the inference could not be drawn that an unsatisfactory score on his evaluation would preclude a merit increase.

Moreover, ARMC ultimately separated Barnett from employment under medical resignation, and no evidence showed that Barnett's separation occurred for any reason other than his exhaustion of Family Medical Leave Act ("FMLA") and non-FMLA leave and the indeterminacy of his return. Finally, any stress that Barnett suffered as a result of the reprimands and negative performance review was not an adverse employment action. The anti-discrimination statutes do "not guarantee a stress-free working environment." *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1233-34 (11th Cir. 2001). Because Barnett cannot establish that he suffered an adverse employment action, Barnett's Title VII, ADEA, and § 1981 discrimination claims fail as a matter of law. Thus, we hold that the district court did not err in granting summary judgment to ARMC on these claims.

## II. Retaliation

Barnett argues that the record contained sufficient facts to show that, because he reported the age and race discrimination, he suffered the following adverse employment actions: unwarranted reprimands; a negative performance evaluation; denial of his request for vacation; and, ultimately, removal from

6

employment.  Barnett contends, initially, that the burden never shifted to him, the non-moving party, because ARMC never met its initial burden to demonstrate that the record contained no facts supporting the retaliation claim.  Further, Barnett mentions that the district court violated his basic constitutional rights to due process, specifically his right to be heard on his retaliation claim.

To establish a *prima facie* case of discriminatory retaliation, under Title VII, § 1981, and the ADEA, a plaintiff must show that: (1) he participated in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the plaintiff's participation in the protected activity and the adverse employment action.  *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993) (stating the elements required for a *prima facie* showing of retaliation under Title VII, which are also applicable to § 1981 and ADEA retaliation claims); *see Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 915, 919 (11th Cir. 1993) (retaliation under ADEA); *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457, 128 S.Ct. 1951, 1961, 170 L.Ed.2d 864 (2008) (retaliation claims permitted under § 1981).

However, an "adverse employment action" in the retaliation context does not carry the restrictive definition that it does in the discrimination setting.  In particular, "the antiretaliation provision [under Title VII], unlike the substantive provision, is not limited to discriminatory actions that affect the terms and

7

conditions of employment." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 64, 126 S.Ct. 2405, 2412-13, 165 L.Ed.2d 345 (2006). Instead, the test is whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68, 126 S.Ct. at 2415 (quotations omitted). Further, "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69, 126 S.Ct. at 2415. Moreover, "[t]he anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 67, 126 S.Ct. at 2414. The Supreme Court stated that "material adversity" is distinguishable from mere "trivial harms." *Id.* at 68, 126 S.Ct. at 2415.

In this case, neither the reprimands, the negative evaluation, nor the denial of Barnett's vacation request were adverse employment actions. There was no evidence that Barnett suffered harm from any action that would have deterred a reasonable employee from making or supporting a charge of discrimination. *See Burlington,* 548 U.S. at 68, 126 S.Ct. at 2415. In particular, nothing in the record showed that these acts were materially adverse in that they would have affected any future pay raise or his future job status in any way. On the contrary, the evidence established that these acts had no effect on his job status whatsoever.

8

Notably, AMRC issued the two reprimands, for Barnett's contribution to the delay in two projects, in November 2009, prior to Barnett making his discrimination complaint in December 2009. Based on this timing, ARMC could not have retaliated against Barnett through these reprimands.

Additionally, the negative performance evaluation would not, by itself, have deterred a reasonable person from making a charge of discrimination, especially in this case, where such an evaluation, by itself, would not impact his salary or job status. *See id.* Further, the denial of a vacation request would not have deterred a reasonable employee from making, or supporting, a discrimination charge. *See id.* Under the particular circumstances of this case, no evidence existed as to why Barnett's request was denied. Moreover, Barnett had been out on medical leave for almost a month, and four days after returning to work, he requested additional time off. It would have been reasonable for an employee to expect that his vacation request would be denied if he had been away from work for almost a month.

Finally, it was not clear whether Barnett's separation was an adverse employment action at all. Barnett had taken leave from employment for medical reasons, and, once Barnett exhausted all of his FMLA and non-FMLA leave, AMRC had no choice but to separate him from employment. Further, the circumstances at the time indicated that Barnett would likely never be returning to

9

work.  Barnett's doctor ordered indefinite leave for an undetermined period of time.  Under these circumstances, a reasonable person would not be deterred from filing a charge of discrimination.

Even assuming Barnett's separation was an adverse employment action, there was no evidence showing that it was the result of anything other than the exhaustion of his FMLA and non-FMLA leave.  Thus, Barnett's report of discrimination and his separation from employment were "completely unrelated." *See Holifield*, 115 F.3d at 1566.  Moreover, Barnett reported the alleged discrimination in December 2009, and was separated from employment six months later in June 2010.  Thus, Barnett's protected activity and his separation from employment were too remote to provide a sufficient causal relationship.  *See Higdon v. Jackson*, 393 F.3d 1211, 1220-21 (11th Cir. 2004) (noting that, while a one-month gap might suggest causal relationship, a three-month gap between the protected activity and the adverse employment action was insufficient to establish causation).  In sum, the record reflects no evidence that Barrett's removal from employment was retaliatory.

Based on the above decision, we conclude that the district court correctly granted summary judgment to ARMC on Barnett's retaliation claims because Barnett failed to establish his *prima facie* case.  Accordingly, we affirm the grant of summary judgment in favor of ARMC.

10

**AFFIRMED.**