**Lorraine FERNANDEZ–
OCASIO, Plaintiff,**

v.

**WALMART PUERTO RICO
INC., Defendant.**

**Civil No. 13–1598 (PAD).**

United States District Court,
D. Puerto Rico.

Signed March 31, 2015.

Anibal Escanellas–Rivera, Escanellas & Juan, San Juan, PR, for Plaintiff.

Ana B. Rosado–Frontanes, Mariela Rexach–Rexach, Schuster & Aguilo LLP, San Juan, PR, for Defendant.

## OPINION AND ORDER

DELGADO–HERNÁNDEZ, District Judge.

Plaintiff Lorraine Fernández Ocasio initiated this action against her former employer, Wal–Mart Puerto Rico Inc., under the American with Disabilities Act of 1990, 42 U.S.C. §§ 12102 *et seq.;* its Puerto Rico counterpart, Law No. 44 of July 2, 1985, P.R. Laws Ann. tit. 1 §§ 501 *et seq.;* and Puerto Rico's Unjust Discharge Act, Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29 §§ 185a *et seq.* Before the Court is Wal–Mart's Motion for Summary Judgment (Docket No. 24). For the reasons explained below, the motion is GRANTED and the case DISMISSED.

## I. *BACKGROUND*

Initially, plaintiff alleged to have been discriminated against because of disability, denied reasonable accommodation, subjected to retaliation, and unjustly discharged from her employment with Wal–Mart (Docket No. 1). Following discovery, Wal–Mart moved for summary judgment as to all claims except the Law No. 80 claim. Plaintiff opposed Wal–Mart's motion (Docket No. 49), Wal–Mart replied (Docket No. 49), and plaintiff sur-replied

(Docket No. 61).[1]

## II. *STANDARD OF REVIEW*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is need for trial. *Mesnick. v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir.1991).

The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual dispute is "genuine" if it could be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is "material" if it potentially affects the outcome of the case in light of applicable law. *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir.2004). As to issues on which the nonmovant has the burden of proof, the movant need to no more than aver absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548; *Mottolo v. Fireman's Fund Insurance*, 43 F.3d 723, 725 (1st Cir.1995).

Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting facts that demonstrate a genuine issue of material fact for trial. *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993). All reasonable factual inferences must be drawn in favor of the party against whom summary judgment is sought. *Shafmaster v. United States*, 707 F.3d 130, 135 (1st Cir.2013).

■ To resist summary judgment, the nonmovant must do more than show some metaphysical doubt as to a material fact. *Matsushita Elec. Inds. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative will not suffice to ward off a properly supported motion for summary judgment. *Nieves–Romero v. United States*, 715 F.3d 375, 378 (1st Cir.2013). Careful record review reflects absence of genuine dispute as to the facts identified in the section that follows.[2] Based on those facts, Wal–Mart is entitled to judgment as a matter of law.

1. After Wal–Mart moved for summary judgment, plaintiff withdrew and requested dismissal of all causes of action except the ADA retaliation claim and the Law 80 unjust-discharge claim (Docket No. 41 at p. 1; Docket No. 61 at p. 2). Judgment will be entered accordingly as to the withdrawn claims.

2. Plaintiff only denied one of Wal–Mart's forty-nine statements (statement 35), admitted statements 7, 8, 10, 13, 20, 23, 24, 26, 38, 40 and 41, and qualified most of the remaining statements. As part of her opposition, she also submitted additional statements of uncontested facts (Docket No. 41, Exh. 1 at ¶¶ 43–49). The problem with that submission is that it is predicated on allegations from the complaint. Standing alone, allegations made in a plaintiff's complaint are not enough to oppose a properly supported motion for summary judgment. *See, Serra v. Quantum Servicing Corp.*, 747 F.3d 37, 43 (1st Cir.2014) (so holding). Considering that factual insufficiency, the Court will disregard as unsupported plaintiff's additional statements of fact 43, 44, and 47–48. In support of statement 46, plaintiff refers to page 85 of her deposition. The supporting excerpts do not, however, support her contention. With respect to statement 49, plaintiff makes reference to the allegation in paragraph 25 of the complaint and

## III. FINDINGS OF FACT

### A. Plaintiff's Position and Responsibilities

Plaintiff was employed with Wal–Mart as a Clerk in the Bakery Department of the Amigo store in Monserrate, in Carolina, Puerto Rico. *See* Docket No. 24, Exh. 1 Wal–Mart's "Statement of Uncontested Facts in Support of Motion for Summary Judgment" ("SUMF") at ¶ 1. Her responsibilities included assuring that the bakery products were displayed and marked with the "sell by" and/or expiration dates; reducing the price of products that were close to the sell by date; removing merchandise that was expired or not apt for sale, in order to avoid selling a damaged and potentially unhealthy product; replenishing the display trays; and decorating cakes. *Id.* at ¶ 2.[3] Associates in the Bakery Department would also take out merchandise such as bread and pastries from the freezer and place them in the oven for baking. Other products, such as cakes and cupcakes, did not have to be placed in the oven. They were simply taken out of the freezer, decorated and marked with the appropriate expiration date prior to being placed on display. *Id.* at ¶ 5.[4]

### B. Food Handling

Wal–Mart must comply with the Federal Food and Drug Administration's Food Code. Selling products that are expired and/or not apt for human consumption has serious implications regarding food safety and customer's health, and may have a negative impact on Wal–Mart's image, may lead to suits, and may affect future sales, in addition to fines and /or an adverse impact during inspections carried out by regulatory agencies, such as the Puerto Rico Department of Health, and the Puerto Rico Department of Consumer Affairs. *Id.* at ¶ 3.[5] Thus, it needs to follow certain procedures for handling food with expira-

---

her response to paragraphs 14, 15, 17, 28 and 32 of Wal–Mart's Statement of Uncontested Facts, without identifying what specific portion of those statements supports her position. The Court has carefully reviewed her response to paragraphs 14, 15, 17, 28, and 32, but these paragraphs do not support those propositions either. An evaluation of the remaining additional statement—number 45—demands the same conclusion with an important remark. This statement is supported by an affidavit dated September 5, 2014 (Docket No. 41, Exh. 1). Portions of the affidavit are inconsistent with plaintiff's previous deposition testimony. But it lacks an explanation as to the inconsistencies. That will not do. *See, Morales v. AC Orssleff's EFTF,* 246 F.3d 32, 35 (1st Cir.2001) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed"); *Torres v. E.I. DuPont de Nemours & Co.,* 219 F.3d 13, 20 (1st Cir.2000) (same). Thus, the Court will not consider the portions of the affidavit that directly contra-

dict without explanation plaintiff's deposition testimony. In connection with sham affidavits, *see, Rodriguez–Fonseca v. Baxter Healthcare Corp. of Puerto Rico,* 899 F.Supp.2d 141, 148 (D.P.R.2012); *Escribano Reyes v. Professional HEPA Certificate Corp.,* 2015 WL 320638, *1–*2 (D.P.R. January 23, 2015).

3. Plaintiff's qualification does not contest these were her responsibilities. As with many other qualifications, she did not adequately support it with record citations. For example, she makes reference to 9 pages of her deposition without indicating what specific portion of those pages supports her opposition.

4. Plaintiff's qualification does not contest this fact, as it only explains that she had other "functions and duties" that were ordered by Soto. As support, she refers to 9 pages of her deposition without specifically pointing out which of those pages supports the opposition.

5. Plaintiff's qualification does not contest this fact. *See,* discussion pertaining to SUMF ¶ 2.

tion dates. Plaintiff received training on the procedures to be followed. *Id.* at ¶ 4.[6]

## C. *Work Plans*

Evelyn Soto, plaintiff's supervisor during the relevant period, gave associates in the Bakery Department, including plaintiff, work plans with lists of items to be completed, including verifying quality of product and throwing away products. *Id.* at ¶ 6.[7] Items consistently appearing in the work plans were: maintaining the department stocked with merchandise; checking expiration dates; reducing the price of merchandise that was about to expire and throwing away expired merchandise; cleaning display trays; ensuring that products had price and were codified; verifying the quality of the products, throwing away products that were not apt for human consumption, independently of the expiration date; not leaving out merchandise without expiration date; maintaining production table clean when not in use; and placing appropriate signs. *Id.* at ¶ 9.[8]

Soto prepared work plans for: August 13, 2011; August 24, 2011; December 10, 2011 January 29, 2012; February 8, 2012; February 3, 2012; February 13, 2012; February 20, 2012; February 21, 2012; March 2, 2012; March 5, 2012; March 7, 2012; March 14, 2012; March 16, 2012; March 21, 2012; March 26, 2012; May 10, 2012; May 22, 2012; June 9, 2012; June 11, 2012; June 30, 2012; and July 2, 2012.

*Id.* at ¶ 7. The work plans corresponding to August 13, 2011, August 24, 2011, and December 10, 2011, reflect a number of action items, including: keeping the floor stocked with merchandise; cleaning display trays and refrigerator drawers, among other areas; maintaining production table clean; placing in production table only products to be worked on; not leaving products exposed unless they were being worked on; and working on codifying all products. *Id.* at ¶ 8.

## D. *Disciplinary Process*

Wal–Mart's Coaching for Improvement Policy provides for the following disciplinary process: a verbal coaching; a written coaching; and Decision Day or "D–Day." The policy states that if an employee receives a coaching within twelve months of receiving a D–Day, the employee will be terminated. *Id.* at ¶ 10.

On January 23, 2012, plaintiff received a verbal warning (confirmed in writing), for failure to comply with Wal–Mart's policy in that her shirt did not have a collar, as required, and for leaving the store to go change without registering her time out. *Id.* at ¶ 11.[9] On January 26, 2012, she received a written warning based on deficiencies found in the Bakery Department, including: deficiencies in replenishment, signage and cleanliness; and leaving trays of cupcakes in the production area without

---

**6.** Plaintiff's qualification does not contest this fact. She refers to 3 pages of her deposition without pointing out where in those pages there is support for the opposition. Her qualification is devoted to Soto's own lack of compliance with Wal–Mart's regulation, which in no way controverts statement no. 4.

**7.** Plaintiff's qualification does not contest the fact that Soto provided associates with work-plan lists to be completed, including the duties included in SUMF ¶ 6.

**8.** Plaintiff's qualification does not contest this fact. *See,* discussion pertaining to SUMF ¶ 2

**9.** Although plaintiff admits that she received a verbal warning referring to Docket No. 41, Exh. 1 at 11, she qualified this statement questioning the veracity of the warning and contending that the conduct described in the warning never occurred (Docket No. 41, "Plaintiff's Responses and Objections to Defendant's 'Statement of Uncontested Facts in Support of the Motion for Summary Judgment'" at ¶ 11).

balance labels. *Id.* at ¶ 12.[10] The warning was based on observations made during a visit by Mr. Lemuel Pagán, District Food Merchandiser. *Id.* at ¶ 13.

On March 14, 2012, plaintiff received a third warning (D–Day) for not complying with her responsibilities in failing to reduce the price on items that were about to expire as required by Wal–Mart's policy, of which she was aware. *Id.* at ¶ 14.[11] As a result, plaintiff was required to prepare an action plan, which she did on March 15, 2012. *Id.* at ¶ 15.[12] Based on Wal–Mart's disciplinary procedure, the next step in the disciplinary process would be termination of plaintiff's employment. *Id.* at ¶ 16.[13]

On July 6, 2012, plaintiff received the evaluation for the period of September 2011 to August 2012. The evaluation resulted in a below expectations rating, the lowest possible rating. *Id.* at ¶ 17. Plaintiff was advised that she needed to improve in several areas, including: maintaining lay out, verifying products' dates, tardiness, and complying with the department's procedures. *Id.* at ¶ 18.

On January 18, 2013, plaintiff received a written memo for failing to remove damaged biscuits that were not apt for human consumption. The biscuits were sold to a customer who came back to the store to return them. *Id.* at ¶ 19. Based on Wal–Mart's disciplinary process, this incident should have resulted in termination of plaintiff's employment, for she already had a verbal warning, a written warning and a Decision or D–Day. Wal–Mart, however, provided her with an additional opportunity to keep her job. *Id.* at ¶ 20.

### E. *Termination*

Wal–Mart's Employee Handbook contains a list of items that may require immediate termination, such as: dishonesty, lack of integrity, falsifying Company records, alteration of payroll records, and violation of the work-schedule policy. *Id.* at ¶ 23. Plaintiff received copy of the Handbook. *Id.* at ¶ 24. Her employment was terminated on February 9, 2013, after she altered her work schedule without authorization, and failed to comply with the assigned schedule for the days of January 28, 2013, and February 1, 2013. *Id.* at ¶ 21.[14] Schedules were made considering

10. Plaintiff qualified this statement claiming that the deficiencies described in the warning "were not her responsibility" and, thus, that the warning was "unjustified." She does not contest that a written warning was given to her and that she signed it. In support of her contention she refers to 11 pages of her deposition without pointing out which portion of those pages specifically supports her qualification.

11. Plaintiff qualified this statement asserting that she felt threatened by her supervisor (Soto) if she did not sign the document. She does not contest—and in fact, admitted during her deposition—(1) that a written warning was given; (2) that she signed the warning; (3) that she did not make any comments; and (4) that she prepared an Action Plan to improve her performance. As with other statements, plaintiff refers to 6 pages of her deposition without identifying where in those pages there is support for her qualification.

12. *See* discussion regarding SUMF ¶ 14.

13. Plaintiff's qualification does not contest this fact, but only refers to page 118 of plaintiff's deposition testimony for the contention that Soto "was going to terminate her before the one year period of the "D" day elapsed." Her statement does not contest SUMF ¶ 16.

14. Plaintiff qualified this statement claiming she never changed nor altered her work schedule. In support of her contention, she makes reference to 6 pages (pages 113–118) of her deposition without pointing which portion of those pages specifically supports the qualification. Moreover, pages 113–117 were not included as part of her submission. Additionally, plaintiff refers to some surveillance videos that were "deleted by defendant," bas-

the business needs, the need for coverage, and the work that had to be done when the store opened and closed. Unauthorized changes to the schedule were not only prohibited, but also affected operations. *Id.* at ¶ 22.[15]

The decision to terminate plaintiff's employment was made by Tirza Cruz, Store Manager; Sylvia Laureano, Assistant Manager Operations; Evelyn Soto, Assistant Manager Produce & Bakery; and Zaira Rodriguez, Market HR Manager. They all agreed that termination was the appropriate disciplinary measure, given plaintiff's disciplinary history and Wal–Mart's policies. *Id.* at ¶ 25.[16]

### F. *Absences*

Wal–Mart has a process for employees (associates) to request reasonable accommodation and to evaluate those requests. *Id.* at ¶ 33. Plaintiff sometimes requested changes in her work schedule or days off in order to take her daughter to medical appointments. These requests were always granted. *Id.* at ¶ 34.[17]

During her deposition, plaintiff explained that what she desired as a "reason-

able accommodation" related to her daughter's condition rather than her own. To that end, she did not wish to close the store every week because she had to take her daughter to therapies and do school homework. *Id.* at ¶ 36.[18]

Plaintiff did not provide or inform Wal–Mart of any kind of restriction from her physician regarding her own ability to perform her work functions. *Id.* at ¶ 35. Every time she requested a leave of absence or time off from work, it was granted. *Id.* at ¶ 32.[19]

### G. *Policy/Complaint Procedure*

Wal–Mart has in place an anti-discrimination policy which prohibits discrimination based on disability. The policy has a procedure to complain if an employee feels she has been discriminated against. *Id.* at ¶ 26. On March 23, 2012, plaintiff complained to Tirza Cruz about Evelyn Soto assigning plaintiff too much work and long work plans. During this conversation, plaintiff was bringing to bear issues which had led to her receiving a "D–Day" and a written warning. *Id.* at ¶ 27.[20]

---

ing her contention on "dockets ————————————— [sic]."

15. Plaintiff's qualification does not contest this fact. To support her contention, she refers to pages of her deposition without pointing out where specifically those pages support the qualification. *See,* discussion at FN 14. The qualification only serves to confirm SUMF ¶ 22.

16. Plaintiff's qualification does not contest this fact. *See,* discussion at FN 14.

17. Plaintiff's qualification does not contest this fact. She refers to a total of 13 pages without specifying what portion of those pages supports the qualification. In any event, the qualification does not deny the fact that all of her requests to change her work schedule were granted.

18. Plaintiff qualified this statement, but the qualification does not contest this fact. She refers to her response at ¶ 33, which, in turn, refers to her responses at ¶ 31 (the complaint and 8 pages of her deposition).

19. Plaintiff qualified this statement. However, the qualification does not contest this fact. It refers to Soto's alleged comments discussed in footnote 21 and to 5 pages of plaintiff's deposition without indicating what portion of those pages specifically supports the qualification.

20. Plaintiff qualified this statement claiming that additional topics were discussed during the Open Door meeting. Her qualification is contrary to her own deposition testimony, during which she confirmed, after reviewing the relevant document, "that that's what was discussed in that meeting." *See,* Docket No. 23, Exh. 2, p. 34 lines 20–22.

Thus, plaintiff's complaints were about work-related situations and the manner in which Soto was supervising. By her admission, other employees also complained about this. *Id.* at ¶ 28.[21] She never complained about any disability-related comments by Soto, or that Soto told her that she (plaintiff) should "get social security." *Id.* at ¶ 29.[22] On April 10, 2013, she filed a charge with the Equal Employment Opportunity Commission. *Id.* at ¶ 41.

## IV. DISCUSSION

The ADA makes it illegal for employers either to discriminate because of a person's disability or to retaliate against someone because she opposes an act made unlawful by the ADA. *See,* 42 U.S.C. §§ 12112(b)(1) and 12203(a), respectively. In the absence of direct evidence of retaliation, courts evaluate ADA retaliation claims under the burden-shifting framework drawn from *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

In line with this framework, plaintiff must show that (1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) a causal connection exists between the pro-

tected conduct and the adverse employment action. *Collazo–Rosado v. University of Puerto Rico,* 765 F.3d 86, 92 (1st Cir.2014); *Kelley v. Correctional Medical Services, Inc.,* 707 F.3d 108, 115 (1st Cir. 2013).

Once the plaintiff has made a *prima facie* showing of retaliation, the defendant "must articulate a legitimate, non-retaliatory reason for the employment decision." *Kelley,* 707 F.3d at 115. If the defendant meets this burden, the plaintiff must show that the proffered legitimate reason is pretextual and that "the job action was the result of the defendant's retaliatory animus." *Id.* (internal citations omitted).

### A. Protected Activity

Complaining of discrimination and requesting accommodation are protected conduct under the ADA. *Colón–Fontánez v. Municipality of San Juan,* 660 F.3d 17, 36 (1st Cir.2011); *Wright v. CompUSA, Inc.,* 352 F.3d 472, 478–479 (1st Cir.2003); *Valle–Arce v. Puerto Rico Ports Authority,* 651 F.3d 190, 198 (1st Cir.2011). Internal complaints constitute protected activity only if the employee complains of discrimination on an imper-

---

21. Plaintiff's qualification does not contest this fact. In fact, SUMF ¶ 28 is precisely what plaintiff testified to during her deposition. *See,* discussion at FN 22.

22. When asked about this matter during her deposition, plaintiff answered as follows:

Q: You see, but my question to you, Ms. Fernandez, was whether you had complained about Ms. Evelyn Soto telling you that you were worthless, that you should get your social security disability because everything hurt all the time. My question was as to that, that you had never complained as to that, correct?
A: **Because I was afraid with her threatening me all the time.**
Q: But the truth is that you never complained about those comments, correct?

A: **Correct.**
Q: Your complaints were with work-related stuff, about the manner in which she was supervising you, correct?
A: **Correct.**
Q. And you were aware that there were other people who were complaining as well.
A: **Correct.**
Q: Do you know that those other people complained about?
A: ·**The same thing, her treatment toward the employees.**
Q: In terms of the way she was supervising them?
A: **Correct. The way she spoke to them.**
Docket No. 23, Exh. 2, pp. 61 (lines 15–25) and 62 (lines 1–15).

missible ground. *Ponte v. Steelcase, Inc.*, 741 F.3d 310, 321–322 (1st Cir.2014); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 885 (7th Cir.2012).

■ Plaintiff did not complain of discrimination, much less of disability discrimination, but about work-related matters such as the amount of work assigned in work plans, and her immediate superior's supervisory style.[23] Nor did she request reasonable accommodation. What she sought was "accommodation" related to her daughter's condition instead of her own. But those requests cannot be considered protected activity under the ADA. The accommodation requirement does not extend to relatives.

■ An employer is not required to accommodate an employee based on her association with a disabled person. *Torres–Alman v. Verizon Wireless Puerto Rico, Inc.*, 522 F.Supp.2d 367, 387 (D.P.R.2007). Given that no reasonable person would have understood that the ADA covers those instances, it cannot support a finding of protected activity. *See, Clark County School Dist. v. Breeden*, 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (rejecting retaliation claim under Title VII where no reasonable person could have believed that the incident referred to in allegation infringed the statutory standard). Plaintiff, then, cannot prevail. *See, Kendall v. Postmaster General of U.S.*, 543 Fed.Appx. 141, 143 (3d Cir.2013) (summary judgment dismissing retaliation claim for lack of protected activity); *Moore v. United Parcel Service, Inc.*, 150 Fed.Appx. 315, 319 (5th Cir.2005) (same).[24]

**B.** *Adverse Employment Actions*

■ Plaintiff contends to have been retaliatorily subjected to: (1) changes in work schedule: (2) drastic increase in functions and duties; (3) disciplinary actions; (4) a negative evaluation; (5) termination; and (6) a hostile work environment. Not everything that makes an employee unhappy, however, is recognized as an actionable adverse action. *Bishop v. Bell Atlantic Corp.*, 299 F.3d 53, 58–59 (1st Cir.2002); *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir.1996).

■ For an employment action to be considered adverse, a reasonable employee would have found it materially adverse. *Gómez–Pérez v. Potter*, 452 Fed.Appx. 3, 7 (1st Cir.2011); *Colón–Fontánez*, 660 F.3d at 36–37. The action must produce significant harm, such that it would dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern and Santa Fe Ry.Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); *Morales–Vallellanes v. Potter*, 605 F.3d 27, 36 (1st Cir.2010). The test for evaluating whether it raises to that level is objective. *Billings v. Town of Grafton*, 515 F.3d 39, 52 (1st Cir.2008); *Burlington Northern and Santa Fe Ry. Co.*, 548 U.S. at 68, 126 S.Ct. 2405.

*1. Work Schedules*

■ Plaintiff alleges her supervisor changed the work schedule at the end of 2011 after plaintiff returned from a leave of absence in February 2011 (Docket No. 41 at pp. 6 and 10). A change in work schedule does not usually qualify as an adverse employment action. A plaintiff

---

**23.** As previously explained, plaintiff's allegations to the contrary in the post-summary judgment affidavit will not be considered.

**24.** Notwithstanding this conclusion, the Court will assume, *arguendo*, that there was protected conduct and evaluate the remaining components of plaintiff's *prima facie* case.

who asserts that it should so qualify, must be specific about the time frame that the new schedule applied to, and about how that schedule deviated from the schedule it replaced. Too general time estimates are insufficient to establish that an adverse employment action occurred. *Colón–Fontánez*, 660 F.3d at 41.[25]

The work schedules and the summary submitted for the period of December 2010 to January 2013, show that before plaintiff requested leaves of absence she had been scheduled to close three nights in a row even though, for the most part, she only closed two nights in a row. The schedule remained essentially unchanged for this extended period. Under these circumstances, there is no veritable evidence of a change in work schedule that would merit considering it materially adverse.

### 2. Job Duties

▆▆▆▆ Plaintiff states her supervisor drastically increased plaintiff's functions and duties (Docket No. 41 at pp. 6, 10, 13). Requiring an employee to perform her job is not considered an adverse employment action even if it involves more work. *Marrero v. Goya*, 304 F.3d 7, 23 (1st Cir.2002); *Morales–Vallellanes*, 605 F.3d at 38. To prove such an increase, a plaintiff must present evidence of what the regular tasks were, what new tasks were assigned, and under what conditions those tasks were performed. *See, Ayala–Sepúlveda v. Municipality of San Germán*, 671 F.3d 24, 31–32 (1st Cir.2012) (summary judgment dismissing retaliation claim; record lacked evidence that the complained of transfer resulted in a work situation unreasonably inferior to norm for the position at issue), and *Marrero*, 304 F.3d at 23 (reassignment to work in same capacity under a different supervisor did not rise to level of adverse employment action where the general job description remained the same, even though the employee was required to do more work and was subject to extreme supervision).

Compare those situations with the situation described in *Valentín–Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 95 (1st Cir.2006), where an adverse employment action was identified from evidence that a police officer was transferred for an unusually long duration to a remote and solitary duty site that was regarded as a punishment by officers. No such evidence has been provided here. Imprecision is not enough to show a materially-adverse increase in employment tasks.

### 3. Evaluation

▆▆▆ Plaintiff takes issue with the "below expectations" evaluation she received in 2012 (Docket No. 41 at pp. 5 and 8). Low performance ratings are not actionable unless accompanied by tangible consequences. *Lapka v. Chertoff*, 517 F.3d 974,

---

**25.** Plaintiff asked the Court to strike Wal–Mart's Time Clock Archive Reports and the summary of those reports by claiming that (1) defendant never attached the work schedules signed and initialed by plaintiff, (2) the documents were prepared to support Wal–Mart's request for summary judgment and not in the regular course of business, (3) Wal–Mart did not identify the person who created the documents; and (4) the date in which the documents were created and the data used is unknown (Docket No. 61 at pp. 9–10). In response, Wal–Mart moved to strike the portion of the sur-reply relating to the Time Clock Archive Reports (Docket No. 63). The Court has carefully reviewed the issue and agrees with Wal–Mart that plaintiff's arguments are insufficient to strike the evidence. The record confirms that (1) the documents were produced and kept in Wal–Mart's regular course of business showing the time actually worked and compensated along with a summary of them, as allowed by Federal Rule of Evidence 1006; and (2) the documents were produced during discovery, before any summary judgment motion was filed.

986 (7th Cir.2008); *Blizzard v. Marion Technical College*, 698 F.3d 275, 290 (6th Cir.2012); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir.2001). Criticism that carries no such consequences is not materially adverse. *Bhatti v. Trustees of Boston University*, 659 F.3d 64, 73 (1st Cir.2011). The record lacks evidence of tangible consequences flowing from plaintiff's evaluation.

#### 4. *Warnings or Reprimands*

 Plaintiff complains of disciplinary actions (warnings) (Docket No. 41 at pp. 4, 8–9). Normally, warnings or reprimands do not qualify as adverse employment actions. Rather, they are a proper instrument for management to focus employees' attention on the need to correct some workplace behavior that the employer perceives as needing correction. *Bhatti*, 659 F.3d at 73.

To be actionable, a warning must carry tangible consequences, as when it is relied on to support material changes in terms and conditions of employment such as termination, suspension, change in compensation, payment of bonuses, and other benefits. *Id.* Since the warnings in question were used as part of the assessment to determine whether plaintiff's employment should be terminated and employment termination is an adverse action, *Jones v. Walgreen Co.*, 679 F.3d 9, 21 (1st Cir. 2012); *Morales–Vallellanes*, 605 F.3d at 36; *Lapka*, 517 F.3d at 985–986, the warnings will be considered materially adverse.[26]

### C. *Causality*

 In order to establish a causal connection, a plaintiff must show that the employer acted because she engaged in a protected activity. *Univ. of Tex. v. Nassar*, —— U.S. ——, 133 S.Ct. 2517, 2523, 186 L.Ed.2d 503 (2013). The connection requires proof of a legally sufficient nexus between protected conduct and the alleged retaliatory act. *Colón–Fontánez*, 660 F.3d at 36–37; *Wright*, 352 F.3d at 478. In proper circumstances, it may be established by temporal proximity between the relevant events.[27] In those cases, the proximity must be very close. *Clark County*, 532 U.S. at 273–274, 121 S.Ct. 1508.

Construing this concept, adverse employment actions more than three months after protected activity have been found insufficiently connected to that particular

---

**26.** Compare the scenario here with the one in *Barnett v. Athens Regional Medical Center, Inc.*, 550 Fed.Appx. 711, 713 (11th Cir.2013), where the court held that even though written reprimands were steps in the employer's progressive disciplinary policy which could have led to harsher disciplinary actions, they were not actionable because the record did not show that they had any tangible effects on plaintiff's employment. *See also, Rennard v. Woodworker's Supply, Inc.*, 101 Fed.Appx. 296, 307–308 (10th Cir.2004) (reprimands received by employee pursuant to employer's progressive disciplinary process not considered adverse actions notwithstanding that each reprimand brought employee closer to termination, absent evidence of sufficiently tangible job consequences linked to the reprimands).

**27.** But see *Williams v. Serra Chevrolet*, 4 F.Supp.3d 865, 879 (E.D.Mich.2014) (indicating that in light of *Gross v. FBL Financial Services*, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) and *Nassar*, 133 S.Ct. at 2517, temporal proximity alone is not enough to allow a reasonable inference of the but-for causation required to prevail in a retaliation action). *See also Carrero–Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 720 (1st Cir.2014) (noting that while temporal proximity is one factor from which an employer's bad motive can be inferred, by itself, it is not enough—especially if the surrounding circumstances undermine any claim of causation).

activity to support a reasonable inference of retaliatory motive. *See, Calero–Cerezo,* 355 F.3d at 25–26 (concluding that one month was sufficient to satisfy burden of showing causal connection, but noting that three and four-month periods have been held insufficient to establish causation); *Colburn v. Parker Hannifin,* 429 F.3d 325, 330 (1st Cir.2005) (no inference of retaliatory motive when employee began to take leave in October and was not terminated until almost four months later); *Perry v. Kappos,* 489 Fed.Appx. 637, 643 (4th Cir. 2012) (a mere three-month, one week lapse between events too long to establish causation).[28] Applying these principles, the chart below correlates by date, plaintiff's leaves of absence, the meeting with her superior, warnings, evaluation, and employment termination.[29]

| Alleged Protected activity | Adverse Employment Action |
|---|---|
| **February 2, 2011–February 20, 2011:** Leave of absence. | |
| | **January 23, 2012:** Verbal warning (confirmed in writing), for failure to comply with Wal–Mart's dress code and leaving the store to go change without registering her timeout. |
| | **January 26, 2012:** Written warning based on deficiencies found in the Bakery Department during audit. |
| | **March 14, 2012:** Written warning for failing to reduce price on items that were about to expire. |
| **March 23, 2012:** Plaintiff complained to Tirza Cruz about Evelyn Soto's giving her too much work and long work plans. | |
| | **July 6, 2012:** Performance review for the period of September 2011 to August 2012. Plaintiff received a "Below Expectations" rating and was advised that she needed improvement in certain areas. |
| **October 18, 2012–December 2012:** Plaintiff requested a leave of absence due to upper back pain with spasm | |
| | **January 18, 2013:** Written warning for failing to remove damaged biscuits that were not apt for human consumption. |
| | **February 9, 2013:** Termination for altering work schedule and not complying with assigned schedule for January 28, 2013, and February 1, 2013. |
| **April 10, 2013** plaintiff filed a charge with the EEOC | |

 No reasonable inference of re-

28. *See also, Strong v. University Healthcare System, L.L.C.,* 482 F.3d 802, 808 (5th Cir. 2007) (three and one-half month gap too long); *Little v. BP Exploration & Oil Co.,* 265 F.3d 357, 365 (6th Cir.2001) (three-month gap too long); *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir.1997) (three-month period insufficient).

29. The allegations regarding work schedule and increase in duties will not be considered in this Section. They are too general and imprecise to be arguably actionable at this point.

taliation emerges from the temporal interplay of the events in question. The warnings of January 23, 2012, January 26, 2012, and March 14, 2012, were issued more than one year after plaintiff's leave of absence of February 2011. The performance review of July 6, 2012, was given some three and one-half months after plaintiff complained about her supervisor's giving her too much work, approximately one year and five months after plaintiff's leave of absence of February 2011. The termination of plaintiff's employment occurred on February 9, 2013, almost four months after plaintiff began a leave of absence on October 18, 2012.

These circumstances undercut any claim of causation. In the absence of causality, plaintiff's claim fails. *See, Perry,* 489 Fed. Appx. at 644 (summary judgment dismissing retaliation claim due to lack of causation); *Rodríguez–Vilanova v. Stryker Corp.,* 2014 WL 203291, *9 (D.P.R. January 17, 2014) (same).

### D. · Pretext

■ Even if plaintiff had been able to establish a *prima facie* case, the evidence would be inadequate to support a finding of pretext. Pretext analysis is more demanding than the assessment of whether a *prima facie* case has been established. *Mariani–Colón v. Department of Homeland Sec. ex rel. v. Department of Homeland Sec. ex rel.,* 511 F.3d 216, 222 (1st Cir.2007). It moves the inquiry to a new level of specificity. *Kosereis v. Rhode Island,* 331 F.3d 207, 213 (1st Cir.2003). It is not enough for a plaintiff merely to impugn the veracity of the employer's justification. *Meléndez v. Autogermana, Inc.,* 622 F.3d 46, 52 (1st Cir.2010); *Mor-*

*gan v. Massachusetts General Hosp.,* 901 F.2d 186, 191 (1st Cir.1990); *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

Plaintiff must produce evidence that the employer did more than get it wrong. *Johnson v. Weld County, Colo.,* 594 F.3d 1202, 1211 (10th Cir.2010). She must elucidate specific facts which would enable a jury to find that the reason given for the employer's action is a lie intended to cover up the employer's real motive: retaliation. *Collazo–Rosado,* 765 F.3d at 92 (1st Cir. 2014); *Meléndez,* 622 F.3d at 52; *Mesnick,* 950 F.2d at 824.

The background for plaintiff's challenge shows a progressive approach to termination consisting of various discrete events, as follows: [30]

- Warning (January 23, 2012). Supervisor orally warned plaintiff that she could not come to work with a collarless shirt. The oral warning was confirmed in writing.

- Warning (January 26, 2012). Issued for deficiencies identified in audit.[31]

- Warning (March 14, 2012). Based on plaintiff's failure to reduce price on items that were about to expire.

- Warning (January 18, 2013). Came about after plaintiff failed to remove damaged biscuits that were not apt for human consumption.

- Employment termination (February 9, 2013). Brought forth when plaintiff altered her work schedule without authorization and did not comply with the assigned schedule for January 28, 2013, and February 1, 2013.

---

**30.** To facilitate the evaluation, the analysis will concentrate on the disciplinary background for plaintiff's termination.

**31.** No discriminatory or retaliatory animus has been ascribed to the manager who conducted the audit (Mr. Pagán).

■ First, these disciplinary measures reflect legitimate business objectives such as need to protect or promote compliance with: the employer's dress code (Warning of January 23, 2012); operational standards (Warning of January 26, 2012); food handling procedure (Warnings of March 14, 2012 and January 18, 2013); and honesty, integrity, and respect for established work schedules (events leading to termination). They are plausible and "separate from any retaliatory animus." *Dennis v. Osram Sylvania, Inc.*, 549 F.3d 851, 859 (1st Cir.2008).[32]

Second, the employer essentially complied with its established disciplinary procedure, following a progressive, multi-stage process to termination. And in its discretion, it provided plaintiff with an additional opportunity to keep her job even though it could have terminated her employment based on its policy after the warning issued following D–Day. Courts should not act as super personnel departments, substituting their judicial judgments for employers' business judgments. *Dennis*, 549 F.3d at 859.

Plaintiff challenges these measures as pretextual, claiming that: contrary to what it is stated in the Warning of January 23, 2012, she told the supervisor that she was not wearing a collarless shirt; in connection with the Warning of January 26, 2012, the supervisor gave her instructions not included in the work plans or in Wal-Mart's Bakery Department's rules and procedures; that other employees were responsible for some of the deficiencies; and

with respect to the incident resulting in termination, she did not change the schedule but that her supervisor did so and asked her to initialize the change (Docket No. 41 at pp. 4–5).

■ Casting doubt on the correctness of the employer's proffered reasons is insufficient to establish pretext. *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1211 (10th Cir.2010); *Menard v. First Sec. Services Corp.*, 848 F.2d 281, 287 (1st Cir. 1988). Plaintiff must show the employer did not honestly believe in the reasons it gave for its actions. *Thompson v. Coca–Cola, Co.*, 522 F.3d 168, 180 (1st Cir.2008); *Keeton*, 667 F.3d at 885. Central to this inquiry is whether the decision makers believed in the accuracy of the information they examined at the time they evaluated whether plaintiff's employment should be terminated.

■ Plaintiff claims her immediate supervisor acted with ill will by having allegedly told her that she would not last more than one year after the D–Day. As the First Circuit has recognized, despite an allegedly retaliatory or discriminatory motive on the part of a supervisor who recommends that some adverse action be taken against an employee, a third person's independent decision to take adverse action breaks the causal connection between the supervisor's retaliatory or discriminatory animus and the adverse action. *Thompson*, 522 F.3d at 178. Correspondingly, when assessing the independence of the ultimate decision makers, courts place considerable emphasis on the decision makers'

---

**32.** For the same reason, they have been identified as legitimate, nondiscriminatory grounds for adverse employment actions. *See, Ball v. Einstein Community Health Associates, Inc.*, 514 Fed.Appx. 196, 200 (3d Cir. 2013) (failure to meet billing, coding, and recordkeeping standards); *Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1289 (7th Cir.1997) (unsatisfactory audit results); *Rowe v. United*

*Airlines*, 62 F.Supp.3d 1225, 1233, 2014 WL 3819461 *6 (D.Colo.2014) (violation of employer's honesty guidelines); *Anderson v. Jewel Food Stores, Inc.*, 837 F.Supp.2d 826, 832–833 (N.D.Il.2011) (violation of food handling and coding policies); *Alpert v. DeKalb Office Environments, Inc.*, 206 F.Supp.2d 1280, 1287–1288 (N.D.Ga.2001) (violation of employer's dress code).

giving the employee the opportunity to address the allegations in question. *Id.*

██ Plaintiff had that opportunity, but failed to use it. She did not include in the warnings and the termination notice that she received, the versions that she now proffers. *See, Ronda–Pérez v. Banco Bilbao Vizcaya Argentaria–Puerto Rico*, 404 F.3d 42, 47 (1st Cir.2005) (rejecting challenge to employer's asserted ground for termination based on affidavits signed after the suit had been brought). Plaintiff alleges that she did not write down her version for fear of retaliation (Docket No. 23, Exh. 2 at pp. 61–62). But subjective fears of retaliation, unpleasantness or confrontation do not alleviate the reasonable employee's duty to alert a decision maker to the allegedly erroneous grounds underpinning the employment decision in question. *See, Shaw v. AutoZone, Inc.*, 180 F.3d 806, 813 (7th Cir.1999) (recognizing and applying principle in the context of affirmative defense under *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

On this record, no showing has been made of implausibilities, inconsistencies, or unexplained deviation from established procedures that would support a reasonable inference that the employer was acting for reasons other than those it stated, and, even further, that those reasons constitute a sham intended to cover up retaliatory motive(s). *See, Dennis*, 549 F.3d at 859 (summary judgment dismissing retaliation claim for lack of pretext). Equally important, the fact that all leaves of absence requested were granted militates against making an inference of retaliation here. *Carmona–Rivera v. Puerto Rico*, 464 F.3d 14, 20 (1st Cir.2006) (so ruling);

*Colón–Fontánez*, 660 F.3d at 40 (same). Plaintiff has not demonstrated that the disciplinary measures of which she complains would not have occurred in the absence of protected activity.

### E. *Hostile Work Environment*

██ Plaintiff contends that she was submitted to a hostile work environment because she complained of discrimination and requested reasonable accommodation (Docket No. 41 at pp. 7, 11–16).[33] A hostile work environment exists when the complained-of conduct is so severe or pervasive as to alter the conditions of plaintiff's employment and create an abusive work environment. The conduct must be both objectively and subjectively offensive, such that a reasonable person would find it abusive, and the plaintiff in fact perceived it to be so. *Rivera v. Puerto Rico Aqueduct and Sewers Authority*, 331 F.3d 183, 188 (1st Cir.2003); *Ponte*, 741 F.3d at 319–320.

██ Workplace conduct is not measured in isolation. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). In determining whether a reasonable person would find particular conduct hostile or abusive, a court must null the totality of circumstances, including the severity and frequency of the conduct; whether it was physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance. *Ponte*, 741 F.3d at 319–320; *Carmona–Rivera*, 464 F.3d at 19.

██ To support liability, those circumstances must reflect a workplace permeat-

---

**33.** As previously discussed, the record does not support the allegation that plaintiff complained of discrimination or sought accommodation within the meaning of the ADA.

Nevertheless, the Court will assume plaintiff did so, and analyze the elements of her hostile work environment claim.

ed with discriminatory intimidation, ridicule, and insult. *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment, an environment that a reasonable person would find hostile or abusive, is beyond statutory purview. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Oncale,* 523 U.S. at 81, 118 S.Ct. 998. Where a workplace objectively falls short of that high-water-mark, it cannot sustain a hostile work-environment claim. *Gómez–Pérez,* 452 Fed.Appx. at 9. The standard is sufficiently demanding to ensure that employment discrimination statutes not become a general civility code in the workplace. *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

■ From this formulation, plaintiff complains of a hostile work environment made up by her immediate supervisor's comments, increase in work functions, and the disciplinary measures (warnings) to which she was subjected (Docket No. 41 at pp. 14–16). The comments that she has attributed to the supervisor (that plaintiff was "good for nothing" because she said she was in pain and should apply for social security) are insensitive and out of line, but no more serious or pervasive than what has been found insufficient to create a hostile environment in the First Circuit. *See, Colón–Fontanez,* 660 F.3d at 43–45 (telling plaintiff on several occasions to get on social security or apply for disability so that she could receive assured check; calling plaintiff hypochondriac; claiming that she was "faking it;" and generally isolating her from general workplace interactions, did not rise to level of severity or pervasiveness required to establish a hostile or abusive work environment claim under the ADA).[34]

■ Bruised or wounded feelings will not on that account satisfy the severe/pervasive standard. The workplace is not a cocoon. Those who labor in it are expected to have reasonably thick skins. *Suárez v. Pueblo Intern., Inc.,* 229 F.3d 49, 54 (1st Cir.2000). Along the same line, as explained earlier, the allegations predicated on increase in work functions and disciplinary measures are not actionable. Actions that are not materially adverse when considered individually may collectively amount to a retaliatory hostile work envi-

---

**34.** *See also: Fontánez–Núñez v. Janssen Ortho LLC,* 447 F.3d 50, 57 (1st Cir.2006) (plaintiff complained to have suffered a hostile work environment because a supervisor called him "gray haired," said that plaintiff looked like a certain co-worker who was considered slow and incompetent; and coworkers called him "cockatoo" based on his gray hair; the First Circuit rejected the claim, noting that although the remarks were inappropriate and completely unprofessional, they amounted to no more than merely offensive utterances); *Kosereis,* 331 F.3d at 216 plaintiff, a Turkish-born Muslim who worked as a vocational teacher, alleged to have suffered a hostile work environment because he was called a turkey and teased about Turkish food; the First Circuit considered the remarks insuffi-

cient to sustain a hostile environment claim); *Marrero v. Schindler Elevator Corp.,* 494 F.Supp.2d 102, 110 (D.P.R.2007) (rejecting hostile environment claim based on allegations that plaintiff was called "viejo," "viejito," and "viejito pendejo" on a daily basis); *Villegas–Reyes v. Universidad Interamericana de P.R.,* 476 F.Supp.2d 84, 91 (D.P.R.2007) (constantly referring to plaintiff as "anciana," "vieja," "abuela," and telling her that "she was too old and should retire" was too mild to form the basis of a hostile work environment claim); *Shaver v. Independent Stave Co.,* 350 F.3d 716, 721 (8th Cir.2003) (routinely referring to plaintiff as "platehead" not actionable even though plaintiff wore a metal plate in skull as part of treatment for epilepsy).

ronment. *Bhatti,* 659 F.3d at 74; *Gómez–Pérez,* 452 Fed.Appx. at 9. But to reach that level, they must be hostile and abusive; in short, unreasonably intolerable.

The sum of functions, warnings, and statements attributed to her supervisor do not come close to meeting that standard. *See, Colón–Fontánez,* 660 F.3d at 43–45 (that the supervisor refused to meet with plaintiff, avoided her, yelled at her and a coworker in front of other employees, did not take action against employees who made comments against plaintiff, and followed plaintiff or asked another employee to follow her if plaintiff left her desk to go to the bathroom, considered insufficient to establish a hostile work environment, even coupled with allegations of temporary removal of plaintiff's telephone, work tools, and computer, which required plaintiff to complete her work manually; withholding of plaintiff's paychecks; reassignment of certain duties; and not inviting plaintiff to attend a workshop). Objectively, the allegations here are milder that those asserted therein and necessarily lead to the same result.[35]

Nor has plaintiff submitted evidence of physically threatening conduct; or shown that counseling was not conducted in private so as not to be humiliating. *See, Bhatti,* 659 F.3d at 74 (rejecting hostile work environment claim of black plaintiff who alleged to be subject to: a requirement that she work longer hours than white counterparts; to an unwritten rule about time off that applied to her coworkers but no to her, and to management's selective enforcement of workplace rules against her in the form of critical memoranda; however, among other things, the employer's conduct was never physically threatening; was generally conducted in private so as not to be humiliating; and although it might have crossed the boundary from professional to unprofessional, it did not reach the level of abuse required to sustain allegation of hostile work environment).

Drawing every reasonable inference in favor of plaintiff, she has failed to establish a triable case of retaliation under the ADA. There is no causal connection between protected conduct and actionable behavior. No juror could reasonably conclude otherwise. Summary judgment, then, is appropriate as a matter of law.

### F. *Law No. 80*

In the complaint, plaintiff alleged that Wal–Mart terminated her employment without just cause under Law No. 80. Since there is no diversity of citizenship between the parties, the claim was brought invoking the Court's supplementary jurisdiction. Wal–Mart's answer denied liability, asserting just cause for termination. It did not, however, move for summary judgment as to this claim.

---

**35.** Similarly, *see, Casper v. Gunite Corp.,* 2000 WL 975168, *1–*2 (7th Cir. July 11, 2000) (referring to "plaintiff—who was mildly mentally handicapped—as "Rick Retardo" and "dumb ass," pointing toward head while telling plaintiff "think, that's why God gives us a brain," saying to plaintiff "why you came up here because you can't read or write or do math," forcing plaintiff to repeat tasks, asking him "are you sure you know what you are doing" when plaintiff was mopping the floor, asking him where he was hiding, commenting that plaintiff must not be working hard enough and that maybe he could be put to work harder reflect insensitive statements but did not rise to level of a hostile work environment"); *Harilall v. University Health System Development Corp.,* 1999 WL 152923, *2–*3 (5th Cir. February 18, 1999) (asking plaintiff if she was a "wetback," asking her if she had a "butt uplift," stating that her job could be in jeopardy if she did not come to work, and suspicion that supervisor was spying on her not sufficient to show hostile work environment).

Federal courts may decline to exercise supplemental jurisdiction over a plaintiff's state claims when the federal claims that gave it original jurisdiction are dismissed. *See,* 28 U.S.C. § 1367(c)(3)(so specifying). As the federal claim under the ADA will be dismissed, the Law 80 claim will be dismissed without prejudice. *Roche v. John Hancock Mut. Life. Ins.Co.,* 81 F.3d 249, 256–257 (1st Cir.1996); *Rodriguez v. Doral Mortg. Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995).

### V. *CONCLUSION*

For the reasons stated, Wal–Mart's motion for summary judgment (Docket No. 24) is GRANTED. All of plaintiff's claims under the ADA and Law No. 44 are DISMISSED WITH PREJUDICE. The claim under Law No. 80 is DISMISSED WITHOUT PREJUDICE.

Judgment shall be entered accordingly.

**SO ORDERED.**